**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter Michael RISING,**
**Defendant–Appellant.**

**No. 87–2567.**

United States Court of Appeals,
Tenth Circuit.

Feb. 8, 1989.

---

Allan A. Hazlett, Topeka, Kan., for defendant-appellant.

Richard L. Hathaway, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Topeka, Kan., for plaintiff-appellee.

Before McKAY, TACHA, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case arises out of a homicide which occurred in the United States Penitentiary at Leavenworth, Kansas on February 23, 1987. In Count 1 of a superseding indictment, Walter Michael Rising, an inmate in that institution, was charged with the murder of a fellow inmate, Paul Leon Jordan, with premeditation and malice aforethought, in violation of 18 U.S.C. § 1111. In a second count, Rising was charged with the unlawful possession of a knife in the penitentiary, in violation of 18 U.S.C. § 1791(a)(2).

A jury convicted Rising on both counts. Rising was sentenced to life imprisonment on the murder charge, with the sentence to

be served consecutively to the sentence he was then serving. On count 2, Rising was sentenced to five years imprisonment, to be served concurrently to the life sentence imposed under count 1. Also, pursuant to 18 U.S.C. § 3013, Rising was assessed $50 on each conviction to be paid into the Crime Victims Fund. Rising appeals the convictions and sentences imposed thereon and urges twelve grounds for reversal. We perceive no reversible error and accordingly affirm.

On February 23, 1987, Paul Leon Jordan, a black inmate, was stabbed nine times in the back by Rising, a white inmate, with a butter knife which had been sharpened on both edges to resemble a dagger and to which a handle had been affixed. Jordan died from the wounds. Rising admits the killing, but claims he acted in self-defense. Only a brief statement of the background facts is necessary.

Both the victim and the defendant frequented the educational building in the penitentiary, the victim as a student and the defendant as a student and an orderly. About four days before the homicide, a prison official broke up a gambling game in a restroom in the educational building and placed all of the participants on report. The participants in the game were all black. Neither the victim nor the defendant was involved in the game. However, the defendant was in the environs and was warned by the prison official who broke up the game to be "on guard," as he might be suspected of being a "snitch." In fact, the official who broke up the game was acting on a tip relayed to him on the telephone by another prison official.

Shortly after the game was broken up, the victim and the defendant had words in the educational building, wherein the victim accused the defendant, *inter alia*, of being a "snitch, a faggot, and a punk.[1]" The two almost came to blows on this occasion, but managed to avoid a physical confrontation.

Over the next four days, the victim made threats on the defendant's life. These threats were made to intermediaries sent by the defendant to attempt to placate the victim and were relayed to the defendant. The defendant got the knife with which he ultimately killed Jordan "to protect" himself from the victim and his "henchmen."

The government's evidence showed that on February 23, 1987, when there was a general movement of the prison population from one area to another, the defendant jumped Jordan from behind and stabbed him nine times in the back of the neck, in the shoulder area, and in the lower back. These stab wounds were fatal. The evidence establishes quite convincingly that the defendant was the aggressor. One government witness, for example, testified that the defendant and Jordan were never "face-to-face." No weapon was found on the victim.[2] Additional facts will only be developed as is necessary to an understanding of the various grounds urged for reversal.

### 1.

Counsel called as defense witnesses several fellow inmates in an effort to show that two or three days before the homicide the victim had made threats against the defendant's life, and that these threats had been communicated to the defendant. The first two prison inmates, Favis Clay Martin and Sherman Banks, on objection by the prosecuting attorney, were not allowed to testify as to the threats made by the vic-

---

**1.** "Punk" is apparently a prison synonym for "homosexual."

**2.** The defendant testified that approximately three hours before the fatal incident, he observed the victim obtain a shard of glass from a broken window and observed one of his henchmen with a knife in the educational building. He further testified that the victim kicked him immediately prior to the killing. Be that as it may, the jury could nonetheless find, under the instructions, that such testimony did not make out a case for self-defense. Much of the defendant's testimony is inconsistent with his own prior statements given shortly after the homicide. These inconsistencies were developed on cross-examination. And, as indicated, the jury was well within reasonable bounds in finding that the defendant's testimony, even if believed, did not establish an "imminent danger of death or serious bodily harm" necessary for the defense of self-defense.

tim. The objection was that such inquiry would elicit hearsay. The following day the district judge changed his mind and allowed similar testimony, from other witnesses, to be introduced pursuant to the exception contained in Fed.R.Evid. 803(4). Specifically, defense witnesses J.C. Hampton, William Post, and Thomas Reece, all inmates at the penitentiary, were permitted to testify, over objection, that the victim had made threats against the defendant's life and that these threats had been communicated to the defendant.

Notwithstanding the fact that the district court permitted three witnesses, as well as the defendant, to testify concerning communicated threats by the victim on defendant's life, counsel, on appeal, argues that precluding the first two prison inmates to also testify regarding the threats is reversible error. No authority is cited for this proposition. Any possible error was cured by the district court's reversal of position which allowed three other inmates to testify concerning threats. Indeed, the trial court could have refused to admit the evidence as cumulative. Thus, at worst, the trial court limited the defense only in the presentation of cumulative evidence, a matter well within the sound discretion of the trial court. *Petersen v. United States*, 268 F.2d 87 (10th Cir.1959). Finally, counsel himself must have been satisfied with the state of the record, for he did not request that either Martin or Banks be returned to court for further questioning.

### 2.

■ Although there was evidence that the victim considered the defendant to be a snitch, there was also considerable evidence adduced during the case that the victim accused defendant of being a homosexual. Part of this testimony came from the defendant's own witnesses. There was also testimony that an accusation of homosexuality which was not true constituted "fighting words." In this general setting the government called, as a rebuttal witness, a former teacher at the penitentiary who had been well acquainted with the defendant. This witness testified that in one of his conversations with the defendant the latter stated that he didn't like homosexuals, wouldn't work with them, and stated, "in fact I hate them." This same witness, over objection, was permitted to answer a question as to what the defendant was "capable" of doing if someone accused him of homosexuality. The witness testified that "he (the defendant) would kill them."

On appeal, counsel argues that the latter answer was improper and dictates a reversal. No authority is cited in support of this proposition. The defendant's theory of the case was that the victim was in reality the aggressor and that he (the defendant) was a peaceful, nonviolent person who tried to avoid difficulty by sending intermediaries to the victim in an effort to placate him. Evidence that the defendant reacted violently to homosexuals and unfounded charges of his homosexuality was arguably permissible to rebut the defendant's claims of peacefulness. *See* Fed.R.Evid. 404(a)(1) & 701. In any event, any possible error was harmless when viewed in the light of the total record. *See* Fed.R.Crim.P. 52(a). Eyewitness testimony from several guards established without a doubt that in the seconds before the assault there were no words or confrontation between the victim and the defendant, and that the defendant jumped the victim from behind and stabbed him nine times in the back.

### 3.

■ Counsel tendered an instruction to the effect that the brutal nature of a homicide did not necessarily defeat the defense of self defense. The district court denied the request that such an instruction be given the jury, although the jury was instructed that the mere fact that excessive force may have been used does not in itself negate a claim of self defense. We perceive no error in the district court's rejection of the tendered instruction. A defendant is not entitled to a particular form of instruction, so long as the instruction correctly states the law. *Elbel v. United States*, 364 F.2d 127, 134 (10th Cir.1966), *cert. denied*, 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550 (1967).

■ Counsel also argues that it was error for the district court to refuse to instruct the jury that Count 2 charged an offense which was a "lesser included" offense to the one charged in Count 1. The district court, to the contrary, instructed the jury that Counts 1 and 2 charged different offenses and separate forms of verdicts were submitted. We find no error in these instructions. The test to be applied to determine if the same act or transaction constitutes violations of two separate criminal statutes is whether each statute requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The essential elements of the two crimes charged are not the same, each involving an element, or elements, not present in the other. Indeed, on the facts, defendant had violated the statutory prohibition against possession of a knife in a penitentiary *before* he ever accosted the victim.

### 4.

We find no pretrial motion to dismiss Count 2 on the ground that it is a lesser included offense of the offense alleged in Count 1. However, after the jury convicted the defendant on both counts, in a posttrial motion, the defendant did contend that the charge in Count 2 should have been dismissed "because it is a lesser included offense of murder." That motion was denied, and the defendant on appeal asserts that denial as reversible error.

As previously indicated, Counts 1 and 2 alleged separate and distinct offenses. There are differing essential elements in each. Count 1 charges the defendant with the premeditated murder of Jordan. Count 2 charges the defendant with the mere possession of a knife within the confines of the penitentiary. Even under the defendant's version of events, he was undeniably guilty under Count 2 even if he had never assaulted Jordan on the fateful day of his death. In addition, the defendant could have completed the crime of murder without possessing a knife. Consequently, the allegation that Count 2 is included in Count 1 is incorrect.

### 5.

■ An administrative hearing was held in connection with defendant's killing of Jordan, and he was given administrative punishment. By pretrial motion, defendant claimed that such administrative punishment barred criminal prosecution, the latter constituting double jeopardy. The denial of that motion is assigned on appeal as reversible error. We perceive no error. It is well established in this Circuit that administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double jeopardy clause. *United States v. Boomer*, 571 F.2d 543 (10th Cir. 1978); *United States v. Acosta*, 495 F.2d 60 (10th Cir.1974); *United States v. Hedges*, 458 F.2d 188 (10th Cir.1972); and *Hutchison v. United States*, 450 F.2d 930 (10th Cir.1971).

### 6.

By pretrial motion the defendant moved to dismiss both counts in the indictment on the grounds that neither charged a criminal offense. The district court denied that motion. We agree. Count 1 charged a violation of 18 U.S.C. § 1111 and Count 2 charged a violation of 18 U.S.C. § 1791(a)(2). The indictment sets forth the customary statutory language to charge the defendant with first degree murder and with possession. Since it tracks the statutory language, the indictment is sufficient. *Carter v. United States*, 173 F.2d 684 (10th Cir.1949).

### 7.

■ As noted at the outset, under 18 U.S.C. § 3013 defendant was assessed $50 on each count to be paid to the Crime Victims Fund. On appeal, defendant argues that such an assessment was improper since the defendant was, at the time, indigent and that it was "inconceivable" that he would ever be able to pay that assessment. The assessment provided for in § 3013 has been held to be mandatory, and imposition of the assessment on an

indigent does not, per se, offend the Constitution. Constitutional principles will be implicated only if enforcement is later sought at a time when the defendant is unable, through no fault of his own, to pay the assessment. *United States v. Pagan*, 785 F.2d 378 (2d Cir.1986).

8.

██ Counsel argues that it was improper for the district court to provide that the life sentence imposed under Count 1 be served consecutively to the sentence the defendant was serving at the time of the murder. We find no error. This was a discretionary matter with the district court, and ordering the life sentence to commence after defendant completes the sentence he was then serving seems fair and just and does not constitute an abuse of discretion. We note that the statute itself provides that in a case of "multiple terms of imprisonment imposed at different times," if the district court does not affirmatively order that they be served concurrently, they shall be served consecutively. 18 U.S.C. § 3584(a).

9.

██ Prior to trial, defendant made a very generalized motion to be allowed to examine the minutes of the Grand Jury, alleging that the witnesses before the Grand Jury had "reason to be hostile" and had provided "self-serving testimony." That motion was denied, the district court believing that there had been no showing of any "particularized need" for such inspection, citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). We agree. A general claim that disclosure of Grand Jury transcripts will possibly reveal exculpatory evidence is not enough to demonstrate "particularized need." *United States v. Short*, 671 F.2d 178 (6th Cir.1982); *United States v. Edelson*, 581 F.2d 1290–91 (7th Cir.), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1978).

10.

██ The defendant also sought to have the indictment dismissed on the ground that the petit jury was itself "illegally composed." In this regard, the defendant complained about the use of voter lists in selection of the petit jury. The use of voter lists is not itself a ground for challenge to a petit jury unless such use systematically excludes a distinct, cognizable class of persons from jury service. *United States v. Afflerbach*, 754 F.2d 866 (10th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985), and *United States v. Test*, 550 F.2d 577 (10th Cir.1976). No such systematic exclusion has been shown.

11.

Defendant also challenges the composition of the grand jury by incorporating the cases and argument used in "Point 10" above. Similarly, we incorporate our discussion under "Point 10" and hold that the composition of the grand jury does not establish a ground for reversal.

12.

██ Counsel argues that the district court abused its discretion in limiting the number of witnesses he could call as defense witnesses and refusing to issue compulsory process for their attendance. We find no abuse of discretion. The witnesses in question were, in the main, inmates at the institution, and, as indicated above, the defendant did call five witnesses who were inmates at the penitentiary. Limiting cumulative testimony is well within the discretion of the trial judge. *Petersen v. United States*, 268 F.2d 87 (10th Cir.1959).

JUDGMENT AFFIRMED.