USCA1 Opinion

 

 September 2, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-2436 DAVID A. JOSSELYN, Petitioner, Appellant, v. RONALD POWELL, ET AL., Respondents, Appellees. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ___________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ___________________ David A. Josselyn pro se on Application for Certificate of _________________ Probable Cause. __________________ __________________ Per Curiam. Pro se prisoner David Josselyn seeks a __________ ___ __ certificate of probable cause to appeal the district court's summary denial of his petition for habeas corpus. Josselyn is presently incarcerated in Massachusetts. He is serving Massachusetts and New Hampshire prison sentences. His habeas petition names the Warden of the New Hampshire State Prison and the Commissioner of the New Hampshire Department of Corrections as respondents. The habeas petition seeks to compel the New Hampshire respondents to restore certain good time credits which Josselyn was compelled to forfeit from his New Hampshire prison record following a September 1989 escape attempt from the Massachusetts Correctional Institution (M.C.I.) at Norfolk. After this escape attempt, Josselyn was subjected to internal disciplinary proceedings instituted by the Massachusetts Department of Corrections (MA-DOC). The MA-DOC sanctioned Josselyn by requiring him to forfeit 500 good time credits.1 In contrast, the New Hampshire Department of Corrections (NH-DOC) compelled Josselyn to forfeit all of the good time credits he had earned thus far on his New Hampshire prison sentence. Josselyn's habeas ____________________ 1. The MA-DOC also punished Josselyn with 15 days of isolation, 2 years in segregation, and reclassification to a higher security prison. Josselyn filed a 42 U.S.C. 1983 action against various Massachusetts prison officials which challenged, inter alia, the disciplinary proceedings which _____ ____ resulted in his loss of 500 days of good time credits in Massachusetts. This court affirmed summary judgment for those defendants in Josselyn v. Poirier, et al., slip op. No. ________ _______________ 92-1014, (1st Cir. July 27, 1992). -2- petition alleged that the NH-DOC's action violated the Double Jeopardy Clause and his right to procedural due process insofar as the action was taken without advance notice to Josselyn and an opportunity to defend himself. To justify the issuance of a certificate of probable cause, the petitioner must "make a 'substantial showing of the denial of a federal right.'" Barefoot v. Estelle, 463 ________ _______ U.S. 880, 893 (1983)(quoting Stewart v. Beto, 454 F.2d 268, _______ ____ 270 n. 2 (5th Cir. 1971), cert. denied, 406 U.S. 925(1972)). ____ ______ "[I]n order to make a substantial showing of the denial of a federal right a petitioner who has been denied relief in a district court '"must demonstrate that the issues are debatable among jurists of reason; that a court could resolve _____ the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"'" Lozada v. Deeds, 111 S.Ct. 860, 863 (1991) (citations ______ _____ omitted). We have thoroughly reviewed the record and Josselyn's memorandum to this court and conclude that Josselyn has failed to make a substantial showing that he has been denied a federal right. The Double Jeopardy Clause does not apply to prison disciplinary proceedings. Rather, the Supreme Court has indicated that the Double Jeopardy Clause applies only to criminal and quasi-criminal proceedings. See, e.g., ___ ____ Breed v. Jones, 421 U.S. 519, 528 (1975)("The risk to which _____ _____ -3- 3 the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal.'")(citation omitted). See also Wolff v. McDonnell, 418 U.S. 539, 556 ___ ____ _____ _________ (1974)("Prison disciplinary proceedings are not part of a criminal prosecution..."). Josselyn was not technically in jeopardy when the MA-DOC instituted administrative disciplinary proceedings against him for his escape attempt. It follows that Josselyn also was not in jeopardy when the NH-DOC decided that he must forfeit all of his good time credits for the same offense. This result is supported by case law which indicates that the fact that a prisoner's conduct results in administrative disciplinary proceedings and sanctions does not bar a subsequent criminal prosecution of the prisoner for the same conduct. See, e.g., Fano v. ___ ____ ____ Meachum, 520 F.2d 374, 376 & n.1 (1st Cir. 1975), reversed on _______ ________ __ other grounds, 427 U.S. 215 (1976); United States v. Rising, _____ _______ _____________ ______ 867 F.2d 1255, 1259 (10th Cir. 1989); Kerns v. Parratt, 672 _____ _______ F.2d 690, 691-92 (8th Cir. 1982)(per curiam); Commonwealth v. ____________ Sneed, 3 Mass. App. Ct. 33, 34-35 (1975). _____ If the Double Jeopardy Clause does not prohibit Josselyn's criminal prosecution for attempted escape, then it likewise cannot prohibit a second administrative sanction by the NH-DOC. This sanction is not properly considered a double punishment for the same disciplinary infraction. Further, since Josselyn is serving Massachusetts and New -4- 4 Hampshire prison sentences concurrently, his escape attempt was an offense against each sovereign. Nothing in the Federal Constitution prevents New Hampshire from punishing Josselyn for this offense.2 Josselyn's second claim is that the NH-DOC violated his right to procedural due process by automatically imposing the forfeiture of his good time credits in his New Hampshire prison record without first affording him notice of the charge against him and an evidentiary hearing where he could defend himself. Josselyn maintains that New Hampshire has created a liberty interest that gives him the right to be free from punishment in excess of that imposed by the MA-DOC. This liberty interest is said to derive from the Information and Data Sheet for New Hampshire Inmates Not Housed at New Hampshire State Prison, Habeas Petition, Exhibit A.3 ____________________ 2. Josselyn maintains that New Hampshire can only punish him if his escape attempt occurred in New Hampshire. We are aware of no authority supporting his position and do not credit it. 3. The Information Sheet states: 3. Rules and Regulations: You will be ______________________ required to follow the rules and regulations that exist in the facility where you are confined. The behavior, dress, work, pay, visiting, and all the other rules apply to you and you are ________ subject to the disciplinary system in _________________________________________ place at that facility, including _________________________________________ whatever punishments are imposed for _________________________________________ violations. You should try hard to ___________ establish a good work and conduct record at that facility since the reports -5- 5 New Hampshire RSA 651-A:22(IV)(b) authorizes the New Hampshire Commissioner of Corrections to subject a prisoner to the loss of "all or any portion of" his good time credits for "[a]ny serious act of misconduct". This language is arguably sufficient to give Josselyn a liberty interest in his New Hampshire good time credits in that it requires a "serious act of misconduct" before the Commissioner may compel their forfeiture. Wolff v. McDonnell, 418 U.S. 539 _____ _________ (1974), established that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent, Mass. Correctional Institution at Walpole v. __________________________________________________________ Hill, 472 U.S. 445, 453 (1985). We will thus assume that ____ Josselyn was entitled to advance notice of the charge against him, an opportunity to present a defense, and a written statement by the factfinders as to the evidence relied upon and the reasons for the disciplinary action. Wolff v. _____ McDonnell, 418 U.S. at 553-67. But Josselyn overlooks the _________ fact that he received notice of the attempted escape charge ____________________ received from your facility will be reviewed and considered by the New Hampshire Parole Board and any other review agencies.(emphasis supplied). Josselyn contends that the emphasized language means that the NH-DOC could not require him to forfeit any more than 500 good time credits because that was the sanction imposed by the MA-DOC. The liberty interest Josselyn claims under this paragraph is the interest to be free from punishment that exceeds the punishment that was imposed by the MA-DOC. -6- 6 and a disciplinary hearing where he could present a defense in Massachusetts. See Habeas Petition, Exhibit D (the ___ Massachusetts disciplinary report and findings thereon). The NH-DOC apparently relied on the MA-DOC's findings in determining that Josselyn must forfeit all his good time credits. The advance notice and hearing Josselyn received in Massachusetts is sufficient to satisfy New Hampshire's obligation to afford Josselyn these procedural due process protections before deducting good time credits for his escape attempt. The record is unclear as to whether the NH-DOC gave Josselyn a statement of reasons for imposing the forfeiture, but Josselyn unquestionably learned of the forfeiture and had an opportunity to challenge it through correspondence to the New Hampshire prison authorities. Exhibit E to the habeas petition includes two letters sent to Josselyn from, respectively, the Acting Warden for the New Hampshire State Prison and a Staff Attorney at the NH-DOC. These letters suggest that Josselyn challenged the forfeiture after he learned of it and that the NH-DOC determined that his contentions were meritless. The letter from the Acting Warden informed Josselyn that New Hampshire law provided that the loss of all good time was punishment for attempted escape. The letter from the Staff Attorney reiterated that escape and attempted escape were treated similarly under RSA -7- 7 651-A:22(IV)(b) and further informed Josselyn that, under an interstate agreement, Massachusetts could affect Josselyn's New Hampshire good time credits so long as New Hampshire ratified the acts of the Massachusetts authorities.4 Josselyn thus received an explanation for the forfeiture. He also appears to have had an opportunity to challenge the forfeiture, although that opportunity may only have arisen after the forfeiture had been recorded on Josselyn's New Hampshire prison record. Under these circumstances, Josselyn appears to have received all the process he was due. Josselyn further complains about the extent of his ______ punishment in New Hampshire. He contends that the Information Sheet, quoted supra at n. 2, gives him a liberty interest _____ which effectively bars the NH-DOC from imposing a punishment in excess of that imposed by the MA-DOC. But the Information Sheet does no such thing. In order to create a liberty interest, prison regulations generally must employ mandatory language in connection with specific substantive predicates that limit the discretion of prison officials to transfer or punish an inmate. See, e.g., Parenti v. Ponte, 727 F.2d 21, ___ ____ _______ _____ 24 (1st Cir. 1984)(citing Hewitt v. Helms, 103 S. Ct. 864, ______ _____ ____________________ 4. Josselyn contends that this letter mischaracterizes New Hampshire as the "sending state." We think the point is specious. While New Hampshire might have been the "receiving state" when Josselyn was first extradited there for trial in 1986, it is the "sending state" insofar as Josselyn's prison sentence is concerned. -8- 8 871 (1983)). The Information Sheet simply states that New Hampshire inmates housed at other institutions are subject to the disciplinary system at the facility wherein they are incarcerated. The Sheet in no way purports to limit the discretion vested in the New Hampshire Commissioner of Corrections concerning the forfeiture of good time credits under RSA 651-A:22(IV)(b). Thus, the Information Sheet does not give Josselyn the liberty interest he claims. In short, Josselyn's habeas petition and its attachments do not suggest that he has suffered a double jeopardy or procedural due process violation. Accordingly, the application for a certificate of probable cause is denied ______ and this appeal is terminated. __________ -9- 9