**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JAMES F. RILEY,

     Defendant-Appellant.

No. 07-3178
(D.Ct. No. 06-CR-40078-RDR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **BRORBY**, Senior Circuit Judge, and **MCCONNELL**, Circuit Judge.

Appellant James F. Riley was convicted by a jury of one count of being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He now

appeals his conviction on grounds the district court abused its discretion or

otherwise erred in: (1) denying his pre-trial motion for disclosure of the grand

jury transcript; (2) denying his motions to dismiss the indictment and for

judgment of acquittal; and (3) admitting into evidence his prior state court

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

conviction, in contravention of *Old Chief v. United States*, 519 U.S. 172 (1997).

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Riley's

conviction.


I.  Factual and Procedural Background

Following an investigation, the government presented a federal indictment

to a grand jury charging Mr. Riley with one count of being a prior felon

knowingly in possession of a firearm, in and affecting interstate commerce, in

violation of 18 U.S.C. § 922(g).  For the purpose of establishing Mr. Riley's

status as a prior felon, the proposed indictment indicated Mr. Riley had been

convicted of a crime punishable by a term of imprisonment exceeding one year

and listed ten of Mr. Riley's prior felony convictions, identifying each by the

name of the offense, the state statute violated, the court of jurisdiction, and the

case number.  In support of the indictment, the government presented witness

testimony to the grand jury.  On June 14, 2006, the grand jury returned the one-

count indictment charging Mr. Riley with being a felon in possession of a firearm

in violation of 18 U.S.C. § 922(g).


Approximately four months before trial, counsel for Mr. Riley requested

the transcript of the grand jury proceeding, arguing the transcript was necessary

to determine:  (1) whether the government's presentation of his ten prior felony

convictions prejudiced the grand jury; and (2) how the government established the interstate commerce element of the offense charged. At a hearing held on September 13, 2006, the district court denied the motion, stating Mr. Riley's mere speculation as to any undue influence caused by listing the ten prior convictions or the sufficiency of evidence on the interstate nexus failed to show a compelling or "particularized need" for production of the transcript. In addition, with respect to the interstate nexus element, it recognized the government's obligation to produce exculpatory evidence and then concluded Mr. Riley's unsubstantiated hope for evidence contained in the grand jury transcript was not grounds for production of the transcript.

Two days before the January 3, 2007 trial, Mr. Riley filed a motion to quash the indictment based, in part, on the government's presentation of his ten prior convictions to the grand jury, which he again argued caused undue influence or prejudice. At approximately the same time, the parties also tried to reach an agreement on how to present the issue of Mr. Riley's prior felony convictions to the petit jury in order to comply with the Supreme Court's decision in *Old Chief*, which encourages parties to stipulate to prior convictions in felon-in-possession cases to avoid undue prejudice in introducing evidence on the name or nature of those prior convictions. *See* 519 U.S. at 190-91. In order to comply with *Old Chief*, the government proposed Mr. Riley enter into a written stipulation that he

"was not legally entitled to possess a firearm, due to the fact … [he] had been earlier convicted of a felony, which bore a possible sentence of imprisonment of more than one year." R., Supp. Vol. 1, Ex. 4 at 1. Mr. Riley's counsel agreed to the portion of the stipulation stating Mr. Riley had a prior felony conviction but opposed the portion indicating Mr. Riley was not legally entitled to possess a firearm at the time of the instant offense.

At the pretrial hearing held the morning of the trial, the parties presented argument concerning the government's proposed stipulation on Mr. Riley's prior convictions and the contested issue of whether the stipulation should include the fact Mr. Riley was not legally entitled to possess a firearm at the time of the instant offense. In opposing the stipulation, Mr. Riley's counsel explained the issue of whether Mr. Riley was legally entitled to possess a firearm was a fact for the jury to decide and that the jury might take the stipulated language regarding his lack of legal entitlement to possess a firearm out of context and find it confusing. In turn, the government contended the stipulation, in order to meet the requirements of establishing a § 922(g) violation, needed to not only establish the fact Mr. Riley had a prior felony but that the prior felony precluded him from possessing a firearm. After hearing the parties' arguments on the issue, the district court determined the proposed stipulation was not "unfair," and, based on Mr. Riley's refusal to enter into the stipulation, it ruled the government could

introduce evidence of one of his prior felonies. At that time, the district court also heard argument on Mr. Riley's motion to quash the indictment premised on his ten prior convictions being presented to the grand jury; it denied the motion but directed the indictment be sealed.

One day prior to the trial, the government presented Mr. Riley's counsel with the requested transcript of the grand jury proceeding in conjunction with the Jencks Act, 18 U.S.C. § 3500. The entirety of the transcript contained the testimony of Kent Biggs, a detective with the Topeka, Kansas Police Department, who testified his investigation established Mr. Riley lived at the residence of a Mr. Bent and acted as his doorman for the purpose of allowing individuals to come into the house to purchase illegal narcotics from Mr. Bent. Detective Biggs testified, in part, that during an interview Mr. Riley "admitted that he possessed a 12-gauge shotgun, which he kept in the basement as a security measure for the residence, due to the fact that they had been robbed at the residence by other drug dealers on previous occasion." R., Supp. Vol. 2 at 3. Detective Biggs also explained that a few days after the interview, Mr. Riley provided a written statement and confessed to possessing the shotgun. In addition, Detective Biggs verified the list of Mr. Riley's ten prior felony convictions, which included three convictions for aggravated assault or battery; during his testimony, a juror asked Detective Biggs what aggravated battery was, to which he provided a definition.

During the jury trial, the government offered into evidence the Kansas state court's journal entry of Mr. Riley's January 31, 2000 conviction for aggravated battery, showing he received a nineteen-month sentence, which the district court admitted into evidence over Mr. Riley's objection. The government also presented the testimony of Detective Biggs, who testified regarding his interview with Mr. Riley and his admissions he acted as a "doorman" at Mr. Bent's residence, lived in the basement of that residence, and kept a shotgun in the basement with him. The government also presented a video tape of the interview which showed Mr. Riley stating he believed Mr. Bent traded some drugs for the shotgun and Mr. Riley admitting, "I had the shot gun in the basement for awhile." R., Vol. 3 at 94; Supp. Vol. 3, Gov't Ex. 1.

Detective Biggs also testified that a few days after the initial interview he met with Mr. Riley again and asked him to provide a written statement, which he agreed to do. In Mr. Riley's statement, which was admitted into evidence without objection at trial, he wrote, in part:

> I lived in the basement and took care of the house in exchange for rent. I also was the door man and screen [sic] potential clients. As far as the checks an [sic] fake ID the "office" was upstairs and was kept private. I had a shot gun in the basement and there were other guns in the house at various times.
>     ....
> The shot gun was [a] break down 12 gauge and the #'s had been obliterated. Full length.

R., Vol. 3 at 106-07; Supp. Vol. 1, Gov't Ex. 2.

On cross examination, Detective Biggs acknowledged his prior statement to the grand jury that the shotgun was a "security measure" was not a statement Mr. Riley directly made, but something Detective Biggs garnered from a direct statement made by Mr. Bent. In so doing, Detective Biggs clarified he did not intend to directly attribute the security measure statement to Mr. Riley.

The government also presented the testimony of Mr. Bent, who testified he sold drugs and operated an identity theft operation out of his residence and that Mr. Riley moved into his basement in September 2003 and acted as a doorman who checked people out and escorted them upstairs as a security function. Mr. Bent stated he obtained a shotgun from one of his drug customers, Mr. Freel, as a security measure because he had been robbed; he described it as a sawed-off, pump-action shotgun which he stated he gave Mr. Riley for the express purpose of using it in his role as doorman. He further testified Mr. Riley kept the shotgun in various places, including in the pink insulation in the wall and also under his bed. Mr. Freel also testified, stating that during the summer of 2003 he traded a "Remington pump" shotgun with a cut-off barrel to Mr. Bent in exchange for drugs and money.

Bruce Stukey, an agent with the Bureau of Alcohol, Tobacco, and Firearms, testified in regard to the state court journal entry on Mr. Riley's prior state conviction and the gun's interstate nexus. Agent Stukey verified the journal entry's contents, which included the case number, judge, sentencing date, Kansas statute violated, and the fact it was a felony offense for aggravated battery with a sentence of incarceration of at least one year. He further stated he obtained the state court journal entry as part of his investigation for the purpose of validating the fact Mr. Riley was a prior felon prohibited from possessing a firearm. He also testified the Remington pump-action shotgun, as described by witnesses, would have been manufactured in Ilion, New York, traveled through interstate commerce, and constituted a firearm for the purposes of 18 U.S.C. § 922(g).

At the close of the government's evidence, Mr. Riley renewed his motion to quash the indictment and also requested a judgment of acquittal, arguing in support of both that the government impermissibly presented his ten prior convictions to the grand jury, causing undue prejudice, and also contending Detective Biggs committed perjury before the grand jury when he improperly attributed to Mr. Riley the statement the shotgun was used as a "security measure." The district court denied Mr. Riley's motions.

Thereafter, Mr. Riley testified on his own behalf, explaining that while he

primarily slept in the basement and the shotgun was there, he never saw it, touched it, or otherwise possessed it. He did, however, admit: (1) he acted as the doorman; (2) the journal entry showed his prior felony conviction; (3) as a result of his prior conviction, he was prohibited from possessing a firearm; and (4) the shotgun was a firearm that traveled through interstate commerce.

At the conclusion of trial, the jury found Mr. Riley guilty of violating 18 U.S.C. § 922(g) for illegal possession of a firearm by a felon. The district court then sentenced Mr. Riley to 180 months imprisonment.

## II. Discussion

### A. Motion for Grand Jury Transcript

On appeal, Mr. Riley contends the district court erred in denying his motion to disclose the grand jury transcript. In support, he argues he stated a legally sufficient need for that information by contesting presentation of his ten prior felony convictions to the grand jury, which he alleges was unduly prejudicial and tainted the indictment process. He also contends, based on information later obtained from the grand jury transcript, that disclosure was warranted, as evidenced by: (1) Detective Biggs's erroneous information to the grand jury concerning Mr. Riley's motive in possessing the firearm as a "security measure," and (2) the lack of evidence offered to the grand jury concerning the interstate

nexus of the offense charged.

The government counters by arguing the district court correctly found Mr. Riley's request for the grand jury transcript was based on nothing more than speculation, which did not establish a compelling and particularized need for disclosure. Alternatively, it contends any error was harmless given Mr. Riley received the transcript before trial and his counsel relied on it while arguing his motions to quash the indictment and for judgment of acquittal.

We review a trial court's denial of a request for disclosure of a grand jury transcript for an abuse of discretion. *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997). We apply our standard of review in conjunction with the applicable legal principles, which include the Supreme Court's recognition "'that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *In re Special Grand Jury 89-2*, 143 F.3d 565, 569 (10th Cir. 1998) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979)). "Secrecy, however, is not absolute," as demonstrated by Federal Rule of Criminal Procedure 6(e), which provides exceptions to the general rule. *Id.* Under the exception applicable in the instant case, the decision on whether to disclose grand jury materials to defendant's counsel is left to the trial court on a showing by defendant "that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). In considering the issue of grand jury disclosure, we have explained:

> [t]he prerequisites for disclosure of grand jury materials are demanding. Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.

*In re Grand Jury 95-1*, 118 F.3d at 1437 (quotation marks and citations omitted). Rather than a general request, the Supreme Court has consistently held a defendant must make a strong showing of a "particularized need" before grand jury materials are disclosed. *See United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984) (quotation marks and citations omitted). Thus, "[t]he rule governing disclosure of grand jury testimony is not to be used as a substitute for general discovery," *In re Lynde*, 922 F.2d 1448, 1453-54 (10th Cir. 1991) (quotation marks and citation omitted), nor as a means to reveal exculpatory evidence, *see United States v. Rising*, 867 F.2d 1255, 1260 (10th Cir. 1989).

In the instant case, it appears Mr. Riley's request for the grand jury transcript to determine how the government established the interstate nexus element of the instant offense was nothing more than a substitute for general

-11-

discovery, which is insufficient to demonstrate a particularized need for such material. Moreover, with respect to Mr. Riley's claim the grand jury transcript supports his contention no evidence was provided to the grand jury establishing an interstate nexus, the Supreme Court has held a defendant is not permitted to challenge an indictment merely on grounds it is unsupported by adequate and competent evidence. *See Costello v. United States*, 350 U.S. 359, 361-64 (1956).

Similarly, it is doubtful the district court abused its discretion when it rejected Mr. Riley's argument his ten prior convictions unduly influenced the grand jury. As the district court explained, the request appeared to be based on mere speculation, failing to show a compelling or particularized need for production of the transcript. Moreover, a grand jury's knowledge of a defendant's prior convictions or criminal record does not necessarily taint the indictment process given it is not subject to the same rules of evidence applicable to petit jury proceedings. *See generally United States v. Levine*, 700 F.2d 1176, 1179 (8th Cir. 1983); *United States v. Camporeale*, 515 F.2d 184, 189 (2d Cir. 1975). In addition, with respect to Detective Biggs's reference to the gun as a "security measure," Mr. Riley's reliance on information obtained from the grand jury transcript *after* the district court's denial is insufficient to establish he articulated the requisite particularized need for production of the transcript *at the time* he requested the transcript.

-12-

However, even if we determine the district court abused its discretion in denying Mr. Riley's request for the grand jury transcript, the record establishes he eventually received the requested transcript from the government prior to the trial. On appeal, Mr. Riley has not demonstrated any specific prejudice he suffered in not receiving it earlier.[1] *See United States v. Radetsky*, 535 F.2d 556, 570 (10th Cir. 1976), *abrogated on other grounds by United States v. Daily*, 921 F.2d 994 (10th Cir. 1990). In fact, as the government points out, Mr. Riley relied on the transcript at trial in renewing his motion to dismiss the indictment and moving for judgment of acquittal. Under these circumstances, we conclude an abuse of discretion, if any, by the district court in denying Mr. Riley's request for the grand jury transcript was harmless and not prejudicial to his defense. *Id.*

B. Motions to Quash Indictment and for Acquittal

We next address Mr. Riley's argument in support of both his motion to quash the indictment and motion for judgment of acquittal raised after the government's case in chief. Mr. Riley contends dismissal of the indictment and his acquittal were warranted, based on (1) the government's presentation of his ten prior felony convictions to the grand jury, and (2) Detective Biggs's

---

[1] At oral argument, counsel for Mr. Riley argued the government's delay in providing the transcript prejudiced Mr. Riley but was unable to provide any definitive explanation on how he was prejudiced and admitted no continuance was requested at the time of trial based on the delay and counsel was able to rely on the transcript during the time of trial.

"perjured" testimony, both of which he claims tainted the indictment process. He also contends the grand juror's questioning of Detective Biggs about his prior aggravated battery conviction "clearly show[ed] confusion amongst the jurors." Apt. Br. at 9. In making these arguments, Mr. Riley does not provide a specific explanation of how the presentation of his ten prior felonies or Detective Biggs's testimony tainted the indictment process or how the alleged juror confusion warranted dismissal of the indictment or even his acquittal. He also does not contend Detective Biggs provided an inaccurate or inappropriate definition of aggravated battery.

In response to Mr. Riley's argument, the government relies on 18 U.S.C. § 921(a)(20)[2] to argue it was legally necessary to list all ten prior convictions in the event Mr. Riley argued any of those convictions were deficient or expunged or his right to possess a firearm had been restored under state law. The government contends that if it had listed only one of his prior convictions and Mr. Riley successfully challenged that conviction, it would have been unable to use any other convictions to prove the charge. Alternatively, it contends any error in

---

[2] Section 921(a)(20) states, in part:

[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

listing the ten prior convictions in the indictment, or in Detective Biggs attributing to Mr. Riley the reference about the gun as a "security measure," were harmless given the petit jury's guilty verdict.

We begin with Mr. Riley's contention the district court erred in denying his motion for judgment of acquittal. In reviewing the denial of such a motion, "we review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Harris*, 369 F.3d 1157, 1163 (10th Cir. 2004) (quotation marks and citation omitted). In conducting our inquiry, we examine the evidence presented to the trial jury and do not "weigh conflicting evidence nor consider the credibility of witnesses," but "simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (quotation marks and citation omitted).

As to the elements of the instant crime, the applicable portion of 18 U.S.C. § 922(g) states:

> It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or

transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). To obtain a conviction under § 922(g) for possession of a firearm by a felon, the government must prove: (1) the defendant was convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. *See United States v. Wilson*, 107 F.3d 774, 779 (10th Cir. 1997). "As we have repeatedly held, possession can be actual or constructive." *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir.), *cert. denied*, 128 S. Ct. 321 (2007). "Actual possession exists when a person has direct physical control over a firearm at a given time," while "[c]onstructive possession exists when a person knowingly holds the power and ability to exercise dominion and control over a firearm." *Id.* (quotation marks and citation omitted).

Keeping these principles in mind, it is evident Mr. Riley ties his argument for acquittal to the evidence presented to the *grand jury*, rather than the evidence presented to the *petit jury* at trial. However, in this case, the grand jury indictment was sealed, and the record shows the petit jury never received evidence on Mr. Riley's ten prior convictions but, instead, heard evidence on only one of his prior convictions, as discussed hereafter. Furthermore, any confusion on Detective Biggs's grand jury testimony attributing to Mr. Riley the statement the gun was a "security measure" was clarified at trial. Thus, we reject Mr.

Riley's argument that evidence presented to the *grand jury* somehow warranted the district court granting his motion for acquittal raised at trial.

Viewing the evidence in the light most favorable to the government, it is also clear a reasonable jury could have found Mr. Riley guilty beyond a reasonable doubt of being a felon in possession of a firearm. More specifically, a jury could have found the evidence presented at trial established Mr. Riley had previously been convicted of a felony, thereby prohibiting him from possession of such firearm at the time of the instant offense, as required by § 922(g), and that he nevertheless knowingly possessed the shotgun which was transported through interstate commerce.

Having determined no error occurred in denying the motion to acquit based on the evidence presented to either the grand or petit juries, we turn to Mr. Riley's motion to quash the indictment which, he suggests, is supported by the same argument in favor of his motion to acquit. We review a trial court's denial of a motion to dismiss the indictment based on evidence presented to the grand jury for an abuse of discretion. *See Levine*, 700 F.2d at 1181; *United States v. Flaherty*, 668 F.2d 566, 583 (1st Cir. 1981); *United States v. Tane*, 329 F.2d 848, 853 (2d Cir. 1964). Unlike trials before a petit jury, the grand jury process is generally unrestrained by the technical procedural and evidentiary rules governing

the conduct of criminal trials. *See* Fed. R. Evid. 1101(d)(2); *United States v. Calandra*, 414 U.S. 338, 343 (1974). When an alleged error in a grand jury proceeding is implicated, we have said errors should either be characterized as: (1) "'technical'" or "'procedural'" affecting only the grand jury's finding of probable cause; or (2) as those "threatening the defendant's 'right to fundamental fairness in the criminal process.'" *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244-45 (10th Cir. 1996) (citations omitted).

When the alleged error is technical and raised prior to a verdict, the petit jury's subsequent guilty verdict establishes not only probable cause of guilt, but the defendant's guilt beyond a reasonable doubt, so that "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at 1245. Only when claimed errors went "beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment and essentially threatened the defendant's rights to fundamental fairness," is the indictment open to question, notwithstanding a subsequent guilty verdict by the petit jury. *Id.* (quotation marks and citations omitted). To make a showing the fundamental fairness of the grand jury proceeding was affected, the defendant must establish the alleged errors "substantially influenced the grand jury's decision to indict, or ... there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v.*

*United States*, 487 U.S. 250, 256 (1988) (quotation marks and citation omitted). Conduct that might transgress such a fundamental right to fairness would include the government's attempt to unfairly sway the jury or pervasive attempts to charge without cause or undermine the defense. *See Lopez-Gutierrez* , 83 F.3d at 1245. "Under such circumstances, we review the record to determine whether the prosecutor engaged in flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment." *Id.* (quotation marks and citations omitted).

In this case, the contested portion of Detective Biggs's testimony to the grand jury involves his statement Mr. Riley possessed the shotgun as a "security measure." Understandably, in the context in which it was made, the grand jury could have attributed the statement about the gun being a "security measure" to Mr. Riley, so that it arguably constituted a technical error. However, it is unlikely attribution of the "security measure" statement to Mr. Riley affected the grand jury's finding of probable cause given a defendant's motive for possessing a firearm is not an element of the offense charged. Even if it affected the grand jury's finding of probable cause, the petit jury returned a guilty verdict based on sufficient evidence, as discussed in more detail later, so that "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* As to Mr. Riley's right to fundamental fairness in the

-19-

indictment process, nothing in the record suggests Detective Biggs or the government intended to unfairly sway the grand jury or otherwise undermine his defense by attributing the security measure statement to Mr. Riley, or that the prosecution was aware of the error or "engaged in flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment." *Id.*

For the same reason, even if we conclude presentation of Mr. Riley's ten prior felony convictions to the grand jury somehow constituted a technical or procedural error affecting the grand jury's finding of probable cause, the petit jury returned a guilty verdict, making the error, if any, harmless. To the extent Mr. Riley is claiming the fundamental fairness of the grand jury proceeding was affected by the presentation of his ten prior felony convictions, he has not convinced us the alleged error "substantially influenced the grand jury's decision to indict" or that there is "grave doubt that the decision to indict was free from the substantial influence" of the alleged error. *Bank of Nova Scotia*, 487 U.S. at 256. Instead, evidence provided at the grand jury proceeding, including Mr. Riley's admission to Detective Biggs that he possessed the shotgun, patently supported the charge. Having determined the error, if any, in listing the ten prior convictions in the indictment was harmless, we need not address the government's argument that listing all ten convictions was legally necessary in

the event Mr. Riley argued any of his prior convictions were deficient, expunged, or his right to possess a firearm had been restored under state law.

Finally, a review of the record does not reveal any confusion by grand jurors which would implicate the fundamental fairness of the grand jury proceeding, or that in Detective Biggs answering a juror's question on the definition of aggravated battery the fundamental fairness of the process was otherwise compromised. In sum, Mr. Riley has, at best, raised technical errors regarding the evidence presented to the grand jury which we deem were harmless and did not, in any way, affect the fundamental fairness of the grand jury proceeding.

## C. *Old Chief* Stipulation

In asserting his last issue on appeal, Mr. Riley contends "[t]he trial court committed an '*Old Chief*' violation by allowing, over defendant's objection and offer to stipulate to a prior felony conviction, ... [admission of] a complete journal entry of [his] prior state court conviction of aggravated battery." Apt. Br. at 9-10. In a fairly rudimentary argument in support of this issue, Mr. Riley contends the district court abused its discretion in refusing to accept his offered stipulation that he had a prior felony conviction which carried a term of incarceration of more than one year and, thereby, inappropriately allowed the jury to consider the

complete journal entry of his 2000 Kansas felony conviction for aggravated battery with a criminal history score of "B."

In response, the government counters no "*Old Chief*" violation occurred given it presented Mr. Riley with a reasonable and fair stipulation on his prior conviction, which he unreasonably refused to sign. To the extent that any such violation did occur, the government contends it was harmless because: (1) the evidence overwhelmingly established Mr. Riley's guilt; (2) the prior aggravated felony conviction was meaningfully different from the instant offense so any prejudice associated with knowing about the prior conviction was minimal; and (3) his prior conviction "carried little weight" in comparison with the "cornucopia" of other bad character evidence to which Mr. Riley did not object.

In considering the parties' arguments, we recognize that in felon-in-possession cases "evidence of the name or nature of [a] prior offense generally carries a risk of unfair prejudice to the defendant" when tried by a jury for violation of 18 U.S.C. § 922(g). *Old Chief*, 519 U.S. at 185. To avoid such a risk, we have directed parties to make "use of a redacted record, stipulation, affidavit, or other similar technique whereby the jury is informed only of the *fact* of a prior felony conviction, but not of the *nature* or *substance* of the conviction." *United States v. Wacker*, 72 F.3d 1453, 1472 (10th Cir. 1995). Where a district

-22-

court abuses its discretion in allowing evidence relating to the name or nature of the prior offense, we look to see whether the error was harmless under Federal Rule of Criminal Procedure 52(a). *See Wilson*, 107 F.3d at 785-86. "Because the error in admitting the prior conviction evidence [is] not of constitutional dimension, the error is considered harmless 'unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect.'" *Id.* (quoting *Wacker*, 72 F.3d at 1473). In conducting a harmless error examination, we review the record de novo to determine whether evidence of the defendant's "prior conviction had a substantial influence on the jury's verdict in the context of the entire case against him." *Wilson*, 107 F.3d at 785-86 (quotation marks and citation omitted).

In this case, Mr. Riley argues the state journal entry improperly identified the name or nature of his prior offense by identifying it as an aggravated battery with a criminal history score of "B," causing unfair prejudice and an abuse of discretion by the district court in admitting it into evidence before the petit jury. However, we need not determine whether the district court abused its discretion in admitting the state journal entry after the parties failed to agree on a stipulation because a review of the record establishes that any error in its admission was harmless.

To begin, regardless of the journal entry's reference to aggravated battery, the record overwhelming establishes Mr. Riley had a prior felony conviction with a sentence exceeding one year, as required for conviction under § 922(g). In addition, overwhelming evidence established Mr. Riley possessed the firearm at issue. Specifically, in his own statement and during a video-taped interview, Mr. Riley admitted his involvement as a "doorman" at Mr. Bent's residence as well as the fact he lived in the basement of that residence, kept a shotgun with him in the basement, and that the shotgun was a break-down twelve-gauge firearm. This evidence was corroborated by Mr. Bent, who testified Mr. Riley moved into his basement, acted as a doorman, and possessed a sawed-off, pump-action shotgun, which he stated he gave Mr. Riley for the express purpose of using in his role as doorman and which Mr. Riley kept in the basement. Both Mr. Bent's and Mr. Riley's statements that Mr. Bent traded drugs for the gun were corroborated by Mr. Freel, who testified he traded a "Remington pump" shotgun with a cut-off barrel to Mr. Bent in exchange for drugs and money. In turn, it is clear the jury rejected Mr. Riley's self-serving and contradictory testimony that the shotgun was in the basement but he never saw it, touched it, or possessed it.

At trial, Mr. Riley also admitted his prior conviction prohibited him from possessing a firearm and that the firearm in question traveled through interstate commerce. To further support the interstate nexus element, Agent Stukey

testified the Remington pump-action shotgun, as described by these individuals, would have been manufactured in Ilion, New York, traveled through interstate commerce, and constituted a firearm for the purposes of 18 U.S.C. § 922(g).

Clearly, the evidence presented at trial overwhelmingly established the elements necessary for Mr. Riley's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). We therefore conclude identification of Mr. Riley's prior conviction as one for aggravated battery, with a criminal history score of "B," did not have a substantial influence on the petit jury's verdict when viewed in the context of the entirety of the evidence against him, and therefore, the district court's abuse of discretion, if any, in admitting the journal entry into evidence was harmless. Having made this determination, it is unnecessary to address the government's additional arguments in support of Mr. Riley's conviction.

III. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Riley's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge