**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARLON L. SMITH,

    Petitioner - Appellant.

v.

LOU ARCHULETA, Warden; CYNTHIA
COFFMAN, the Attorney General of the
State of Colorado,

    Respondents - Appellees.

No. 15-1477
(D.C. No. 1:14-CV-01185-WJM)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

Marlon Smith, a Colorado state prisoner proceeding pro se,[1] applies for a

certificate of appealability (COA) to challenge a district-court order denying his 28

U.S.C. § 2254 application for a writ of habeas corpus. He also seeks leave to proceed

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Smith appears pro se, "we construe his pleadings and papers liberally, but our role is not to act as his advocate." *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

*in forma pauperis* (IFP). Exercising jurisdiction under 28 U.S.C. § 1291, we deny Smith's IFP motion, deny his COA application, and dismiss this matter.

## BACKGROUND

On May 15, 2003, a jury convicted Smith of first-degree murder, two counts of attempted first-degree murder, two counts of first-degree assault, first-degree burglary, three counts of menacing, and a single count of violating a restraining order. The jury found that, on August 27, 2002, Smith entered a house where his estranged wife and others were gathered and shot three of the house's occupants, killing his wife and wounding others. He appealed his conviction, but the Colorado Court of Appeals affirmed.[2] In June 2005, the Colorado Supreme Court denied his petition for certiorari.

In February 2006, Smith filed a pro se motion for postconviction relief under Colo. R. Crim. P. 35. On December 13, 2007, after the state district court appointed Smith an attorney, Smith filed an amended postconviction motion asserting over 60 claims for relief. After a hearing on November 23, 2009, the state district court denied relief. On July 5, 2012, the Colorado Court of Appeals affirmed. On October 7, 2013, the Colorado Supreme Court denied his petition for certiorari.

On April 28, 2014, Smith filed a pro se application for a writ of habeas corpus under 28 U.S.C. § 2254. In his application, Smith raised the following 12 claims as summarized by the federal district court, Claim Eleven having three subparts:

---

[2] Though the Colorado Court of Appeals affirmed the judgment, it did remand for correction of the mittimus because of a clerical error.

2

(1) State district court violated his due process rights by refusing to suppress an unduly suggestive photo-identification procedure;

(2) State district court violated his right to a fair trial by allowing a putative expert witness to relate theories in psychology that are unreliable proof of motive, intent and propensities;

(3) State district court violated his due process rights by failing to remedy the admission of unfounded, inflammatory hearsay evidence designed to frame the government's theory of the case;

(4) State district court violated his right to a fair trial by overruling a well-founded Rule 403 objection without coherence or actual review of challenged evidence of a 911 audiotape;

(5) State district court violated his due process rights by denying him an opportunity to suppress collateral use by the government of prior unconstitutional convictions;

(6) State district court violated his due process rights by failing to conduct a *Weidemer* analysis regarding the validity of prior convictions, burdening his right to testify;

(7) Evidence is insufficient to sustain a guilty verdict for burglary, felony murder, and violating a restraining order;

(8) Sentence for the offense of attempted felony murder in Count Four should be vacated because only one killing;

(9) Ineffective assistance of appellate counsel for failure to amend opening brief when U.S. Supreme Court issued decision in *Crawford*;

(10) *Crawford* due process issue;

(11) Ineffective assistance of trial counsel for failure to conduct forensic examinations and for:

    (i) Failure to investigate and present evidence of wife's drug overdose;

3

(ii)  Failure to object to prosecution eliciting expert opinion from domestic violence expert without tendering her as expert witness;

(iii)  Failure to recognize a nonwaivable conflict of interest; and

(12)  Ineffective assistance of postconviction counsel for failure to present the result of a mental health examination during the postconviction process and trial counsel's failure to present these results to the courts or to the petitioner implicating *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

R. at 480–81 (list formatting altered).

The federal district court denied all of Smith's claims, some on procedural grounds and others on substantive grounds. The federal district court dismissed Claim Two and Claim Four because Smith had failed to exhaust those claims in state court. R. at 481–89 (dismissing Claim Two and Claim Four "as procedurally defaulted and therefore barred from federal habeas review"). The federal district court further dismissed the portion of Smith's Claim Eleven that asserted his trial counsel was ineffective for failing to conduct forensic examinations because, among other reasons, Smith had failed to address the claim in his opening brief. The district court denied the remaining claims on substantive grounds.

The district court also certified under 28 U.S.C. § 1915(a)(3) that any appeal from its order "would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of appeal" and dismissed the action with prejudice. R. at 689. Smith timely appealed, filing a pro se application for a COA and an IFP motion.

4

**DISCUSSION**

Of his original 12 claims, Smith has abandoned on appeal Claim Eight, Claim Ten, and Claim Twelve. He contests the procedural dismissal of Claim Two, Claim Four, and the forensic-examination portion of Claim Eleven. He also contests the district court's substantive dismissal of Claim One, Claim Three, Claim Five, Claim Six, Claim Seven, Claim Nine, and Claim Eleven (subparts (i), (ii), and (iii)). After noting the appropriate standard of review, we address each claim below and also consider Smith's IFP motion.

**A.     Certificate of Appealability**

To appeal the federal district court's denial of his habeas application, Smith must first obtain a COA under 28 U.S.C. 2253(c)(1)(A). The analysis we use to determine whether to grant a COA depends on the district court's disposition of the habeas claims. For the claims that the district court denies on the merits, we may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). In other words, for those claims, Smith must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). As to the claims the district court denied on procedural grounds, we may issue a COA only if Smith shows both "that jurists of reason would find it debatable whether the petition states a valid claim of

5

the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

### 1.     Claim One: Improper Photo-Identification Procedure

In Claim One, Smith asserts that police officers used an overly suggestive photo-identification procedure to have witnesses identify him and, as a result, that the trial court erred by refusing to suppress the identifications in violation of his due-process rights. Largely for the reasons stated in the district court's well-reasoned order denying habeas relief, we conclude that reasonable jurists could not debate whether Claim One should have been resolved differently.

To determine whether the photo-identification procedure in this case was constitutionally unsound, we use a two-step analysis. *See Grubbs v. Hannigan*, 982 F.2d 1483, 1489–90 (10th Cir. 1993). "First, we must determine whether the procedure was unnecessarily suggestive. If the procedure is found to have been unnecessarily suggestive, we must then weigh the corrupting influence of the suggestive procedure against the reliability of the identification itself." *Id.* (citations omitted). The "central question" is "whether under the totality of circumstances the identification was reliable." *Neil v. Biggers*, 409 U.S. 188, 199 (1972) (quotation marks omitted). "The ultimate question of whether the admission of pre-trial identification testimony violates due process is reviewed de novo on appeal, although the underlying facts found by the state court are entitled to a statutory presumption of correctness pursuant to 28 U.S.C. § 2254(d)." *Grubbs*, 982 F.2d at 1489 n.5.

6

If we determine that the procedure used in Smith's case was unnecessarily suggestive, we will next weigh five factors "against the corruptive effect of a suggestive pre-trial identification procedure to determine whether the identification testimony should have been suppressed." *Id.* at 1490. The five factors are: (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 199–200.

In Smith's case, we need not analyze the reliability factors because we conclude, as did the district court, that the photo lineup was not impermissibly suggestive. Smith's sole argument on this point is that the photo lineup was impermissibly suggestive because "the photo used of Mr. Smith was distinctly different than any others as it was a Colorado driver's license photo and not a mug shot." Petitioner's Opening Br. at 3(b). As best we can tell, Smith has mentioned this irregularity just once before in his state- and federal-court briefing. And then he did so only in a footnote, where it is unclear that he is arguing that the lineup was suggestive *because* his was the *only* photo that was not a mug shot. *See* R. at 595 n.2 (noting in his federal-district-court traverse that "[t]he photograph that was used of Applicant in the photo array was from his Colorado State ID, not a mug shot from the police department," but failing to say whether the other images in the photo lineup were mug shots and what about his driver's license photograph made it so obviously

7

different from the other photos). Based on this footnote, it isn't surprising that the district court failed to explicitly address Smith's contention.

Assuming that we may even address this argument raised for the first time on appeal and never addressed by the Colorado state courts, we note that the federal district court—citing in part the state district court's original review of the photographs—indirectly resolved the issue. The district court agreed with the state district court's findings that the photo array consisted of black men of similar size and shape, with similar hairstyles, and with similar complexions, all standing in front of similar backgrounds. The federal district court further agreed with the state district court in concluding that the photos "had no stark contrasts that would effectively make [Smith's] photo 'jump out' at the viewer." R. at 645. On these bases, we conclude that the photo array was not impermissibly suggestive.[3] We note that we need not address Smith's other arguments concerning the reliability of Diane Sanchez, Tabitha White, and Robert Gutierrez. Those arguments are appropriately suited for the second step of an analysis we abandon at step one.

Because we conclude that reasonable jurists could not debate whether Claim One should have been resolved differently, we deny a COA for this claim.

---

[3] Smith also argued in his habeas petition that the six-person photo array was suggestive because it only included three individuals who were old enough to be an uncle of a 17-year-old victim of the shooting who exclaimed that the perpetrator was her "Uncle Marlon." R. at 14. Smith does not reassert this argument on appeal. Even if this argument were properly before us on appeal, though, it would not affect our conclusion that the photo array was not impermissible suggestive.

8

**2.      Claim Three: Failure to Remedy Improper Hearsay Admission**

In Claim Three, Smith argues that he was "deprived of the fundamental fairness essential to the concept of due process" when a witness at trial referred to evidence that the state district court had already excluded. R. at 597. At trial, during the prosecution's direct examination of Diane Sanchez, Sanchez twice referred to Smith's having broken his wife's arm sometime before the date of the shooting. Because the state district court had in a pretrial order disallowed the government from eliciting testimony about this arm-breaking, Smith moved for a mistrial after Sanchez's volunteered, non-responsive testimony about it. The state district court denied the motion because the prosecution had not intentionally elicited Sanchez's improper testimony and because it concluded that a curative jury instruction would sufficiently repair any prejudice. In his habeas petition and on appeal, Smith argues that the jury instruction was insufficient to correct the error and that the state district court should have declared a mistrial. The federal district court denied relief on this ground, and we conclude that reasonable jurists could not debate the federal district court's Claim Three denial.

We follow in the district court's footsteps and quote the Colorado Court of Appeals' discussion of the events related to Claim Three:

> Before trial, the prosecution sought leave to introduce evidence of uncharged conduct—namely, occasions when defendant had made contact with his wife in violation of a restraining order. The trial court granted the motion but disallowed evidence that defendant had broken his wife's arm.

9

At trial, however, a witness ran afoul of the court's order. In a nonresponsive answer to the prosecutor's question, the witness indicated that defendant had broken his wife's arm:

> Prosecutor: In relationship to the time that he came into your house and was shooting, how much time had passed between her telling you that he was getting mean and that time?
>
> Witness: I'd say about two, three weeks when she told me that he really broke her arm, that she didn't fall and get hurt.

Defense counsel objected, and the court sustained the objection. Defense counsel also made a motion for a mistrial, which was denied. Shortly thereafter, the witness again referred to the broken arm:

> Prosecutor: Was [the wife] upset when she was talking to you?
>
> Witness: She just—she just told us. She didn't say nothing bad. She just told me he broke her arm. He's not as good as we thought he was.

Defense counsel again requested a mistrial. The court again denied this request.

R. at 167–68. The trial court ultimately gave the jury the following limiting instruction:

> Yesterday you heard [the witness] testify as to an incident regarding a broken arm. You are instructed to disregard and ignore any testimony regarding this broken arm. You are to delete it from your notes. You are to delete it from your minds. You're in no way to consider it in any way, shape, form, manner or style. You will also receive at the end of the evidence a written instruction as to that effect.

R. at 649 (alteration in original).

A state district court's "evidentiary and procedural rulings may not be questioned unless [the habeas petitioner] demonstrates that the remark by [a witness]

10

was so prejudicial in the context of the proceedings as a whole that he was deprived of the fundamental fairness essential to the concept of due process." *Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir. 1989). The federal district court concluded that the improper testimony here did not establish a constitutional violation because, in the context of the proceedings as a whole, the testimony did not deprive Smith of the fundamental fairness essential to the concept of due process. R. at 649–51. Implicit in the federal district court's conclusion is the view that the limiting instruction remedied any potential prejudice from the testimony.

On appeal, Smith argues that "through allowance of this prejudicial, hearsay evidence, [the state district court] allowed the jury to consider that a leopard doesn't change his spots, i.e., that Mr. Smith acted in conformity with his alleged previous bad behavior." Petitioner's Opening Br. at 3(e). Acknowledging the trial court's limiting instruction, Smith further argues that "[w]e all know as well, while a curative instruction was tendered for the jury not to consider the suppressed evidence, that (with [all] respect to the jurors), it is virtually impossible to un-ring that bell." *Id.*

We agree with the federal district court that given the overwhelming evidence at trial—including admissible testimony regarding Smith's increasingly angry behavior toward his wife in the weeks leading up to the shooting—the two references to a broken arm were not so prejudicial in the context of the proceedings as a whole that Smith was deprived of due process. This is especially true given the state district court's limiting instruction to the jury, despite Smith's argument regarding the

11

futility of curative instructions. *See Nichols*, 867 F.2d at 1254 (noting that a limiting instruction "would have cured any possible prejudice" resulting from a witness's unsolicited remark even about a defendant's prior convictions and incarcerations); *Morales v. Jones*, 357 F. App'x 184, 185 (10th Cir. 2009) (unpublished) (agreeing with magistrate judge's conclusion that "the admission of [improper] evidence did not render Petitioner's trial fundamentally unfair, particularly in light of the limiting instruction given to the jury").

Because we conclude that reasonable jurists could not debate the propriety of the district court's Claim Three conclusion, we deny a COA for this claim.

### 3. Claim Five: Improper Use of Evidence of Prior Convictions

In Claim Five, Smith argues that the state district court improperly denied his motion to exclude evidence of his prior felony convictions by applying an inapplicable time-bar statute. As a result, Smith alleges that the state district court denied him his constitutional right to due process. Specifically, Smith submits that "the lower courts misinterpreted the plain meaning of [Colo. Rev. Stat. § 16-5-402(1) (2015)], in turn failing to observe the requisite fundamental fairness which is essential to the very concept of justice." Petitioner's Opening Br. at 3(g) (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)); *see Lisenba*, 314 U.S. at 236 ("As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice."). The federal district court denied habeas relief on this claim, concluding that

12

[t]he state district court's decision to deny [Smith's] motion to exclude prior convictions because the motion was subject to the three-year limitation under Colo. Rev. Stat. § 16[-]5-402 . . . was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

R. at 653–54. We agree with the district court and conclude that no reasonable jurist could debate whether Claim Five should have been resolved differently.

Before we reach our COA analysis, we must clear up an apparent inconsistency in Smith's arguments under Claim Five. In his COA application before us, Smith says that he "sought suppression of his prior convictions . . . [because] none of the charges were relevant to the immediate case." Petitioner's Opening Br. at 3(f). This characterization of his motion to exclude is at odds with his position in his state-court postconviction motion to vacate and in his habeas petition. In his state-court postconviction motion to vacate, Smith said that he sought to exclude evidence of two prior felony convictions by attacking the convictions' *validity*. Specifically, in his state-court postconviction motion, Smith said that his trial counsel alleged only "that Mr. Smith's convictions were the results of various constitutional infirmities." R. at 245. Similarly, in his habeas petition before the federal district court, Smith argued that "the district court violated the Petitioner's constitutional right to due process and reversibly erred by denying him opportunity to suppress collateral use by the government of prior unconstitutional convictions." R. at 24 (capitalization altered). To the extent Smith attempts to argue that the state district court erred by refusing to exclude evidence of his prior convictions because they were irrelevant (as

13

opposed to constitutionally invalid),[4] we note that this argument didn't appear in his habeas petition. We therefore don't consider this particular argument and won't grant Smith a COA on this issue. *United States v. Banks*, 355 F. App'x 123, 125–26 (10th Cir. 2009) (unpublished) (declining to issue a COA on an issue where arguments appeared for "the first time on appeal"). Still, because Smith proceeds pro se, we liberally construe his filings and consider his general argument that the district court erred in denying habeas relief on Claim Five as it appears in his habeas petition.

The state district court denied Smith's motion to exclude evidence of his prior convictions, applying a state statute that provides that "no person who has been convicted as an adult . . . under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction . . . unless such an attack is commenced within the applicable time period." Colo. Rev. Stat. § 16-5-402(1). Smith doesn't dispute that, if section 16-5-402 applies, a three-year time limit applies to a collateral attack of prior felony convictions. *See id.* (providing for a

---

[4] For example, in his COA application, Smith argues as follows:

> At trial, Mr. S[m]ith sought suppression of his prior convictions, i.e., that they not be allowed to be utilized at trial, as none of the charges were relevant to the immediate case. (Mr. Smith's priors were one count each of simple robbery, possession of marijuana, and check fraud). Mr. Smith was not (as described in the plain language of the statute), challenging the validity or adjudication of said, and instead only seeking to suppress their use in his current trial as other wrong acts, as the prosecution had filed notice of intent to introduce said.

Petitioner's Opening Br. at 3(h).

three-year time period for collateral attacks on all felonies other than "class 1 felonies").

As both the state district court and federal district court recognized in this case, Colorado courts have applied section 16-5-402 to exclude evidence of prior felony convictions to impeach a defendant, *People v. Fultz*, 761 P.2d 242, 243–44 (Colo. App. 1988), *abrogated on other grounds by People v. Wiedemer*, 852 P.2d 424 (Colo. 1993), and to exclude evidence of prior felony convictions to establish predicate offenses underlying separate charges, *Wiedemer*, 852 P.2d at 430. Moreover, in *Fultz*, the Colorado Court of Appeals concluded that the term "collateral attack" in section 16-5-402(1) "includes any motion to prohibit the prosecution from using a prior conviction." *Fultz*, 761 P.2d at 243. Smith's motion collaterally attacked the constitutional validity of his prior felony convictions and, on that basis, Smith's motion sought to prohibit the prosecution from using the convictions for any purpose. In other words, Smith's motion collaterally attacked his prior convictions much like the motions in *Wiedemer* and *Fultz* did. His motion is similarly subject to the three-year time bar, which he didn't meet. We thus conclude that no reasonable jurist could debate the propriety of the federal district court's dismissal of Claim Five.[5]

---

[5] Section 16-5-402 provides an exception to the applicable time bar "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." Colo. Rev. Stat. § 16-5-402(2)(d). To the extent this impacts a due-process analysis, we note, as did the federal district court, that "[t]he trial court did not categorically deny [Smith's] motion to exclude. Defense counsel

15

## 4.     Claim Six: Improper Burden on Smith's Right to Testify

Smith's Claim Six is closely tied to Claim Five. In Claim Six, Smith argues that, "because the trial court disallowed suppression of Mr. Smith's prior criminal convictions, if he testified, they would be introduced, regardless of their relevancy. Hence the failure to suppress impermissibly chilled Mr. Smith's right to testify." Petitioner's Opening Br. at 3(h). Smith couches this claim in terms of an exception to the section 16-5-402 time bar. The exception allows a defendant to collaterally attack a prior conviction "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect." Colo. Rev. Stat. § 16-5-402(2)(d). In his COA application, Smith argues that the state district court chilled his right to testify "by failing to allow a determination of whether Mr. Smith was entitled to [the] justifiable excuse/excusable neglect exception to the statutory time limitations of [Colo. Rev. Stat. § 16-5-402(1)]." *Id.* The federal district court denied habeas relief on this claim, and we conclude that no reasonable jurist could debate the district court's decision.

In denying habeas relief on Claim Six, the federal district court first cited the Colorado Court of Appeals' discussion of Claim Six, noting that the state district court did indeed address the time-bar exception. We do the same:

---

argued justifiable excuse . . . and sought and was granted alternate defense counsel to review the constitutionality and time bar issues raised regarding the prior convictions." R. at 653.

16

Defendant next argues that the court erred in finding that he had failed to demonstrate justifiable excuse or excusable neglect for his untimely collateral attack. We again disagree.

As to the 1995 conviction, defendant argued that the three-year limit did not begin to run until 2000, when he completed his sentence to probation. The trial court correctly rejected this argument. Where, as here, a defendant does not file a direct appeal, the three-year period begins when [the] sentence is imposed. *People v. Hampton*, 857 P.2d 441, 444 (Colo. App. 1992), *aff'd*, 876 P.2d 1236 (Colo. 1994).

With regard to the 1981 conviction, defendant argued he was not informed during his 1995 trial of his right to bring a collateral attack. The trial court correctly rejected this argument. Ignorance does not constitute justifiable excuse or excusable neglect. *See People v. Mershon*, 874 P.2d 1025, 1036 (Colo. 1994) (lack of knowledge about the time bar does not constitute justifiable excuse or excusable neglect as a matter of law). Moreover, even if defendant had brought a collateral attack during his 1995 trial, it would have been time barred. *See People v. Fagerholm*, 768 P.2d 689, 693 (Colo. 1989) (grace period to allow collateral attacks on conviction obtained before enactment of § 16-5-402 expired on July 1, 1989).

R. at 173–74. With this as background, the federal district court "f[ound] the [state courts'] factual determination [regarding the inapplicability of the time-bar exception] correct and that [Smith] has failed to rebut the presumption of correctness by clear and convincing evidence." R. at 656–57.

Smith's COA application is devoid of any meaningful argument that this district-court finding was unfounded. Smith simply notes that "Mr. Smith had no forum within which to post a challenge as to the use of his priors in some unforeseen or possible later charge." Petitioner's Opening Br. at 3(i). We don't see how this argument supports Smith's Claim Six, which alleges that the state district court failed to "allow a determination" of whether the time-bar exception applied in Smith's case. *Id.* at 3(h). This argument doesn't call into question the federal district court's

17

finding that the state district court did indeed allow Smith an opportunity to argue that the time-bar exception applied. It certainly doesn't attack the reasonableness of the state district court's conclusion that the exception didn't apply.

We thus conclude that no reasonable jurist could debate whether the district court erroneously denied habeas relief for Smith's Claim Six and deny a COA on this claim.

### 5.      Claim Seven: Insufficient Evidence

In Claim Seven, Smith argues that there was insufficient evidence for a rational jury to find him guilty of burglary, felony murder, and violating a restraining order. At trial, the government introduced some evidence of a pending restraining order that Smith's wife had received on August 14, 2002, a couple of weeks before her murder. The prosecution implied that Smith's learning of the restraining order motivated him to commit the burglary and murder. Smith argues that the evidence was insufficient to show that he even knew about the restraining order by the day of his wife's murder. And Smith argues that, without this motive evidence, the jury had insufficient evidence to convict him of burglary, felony murder, and violating the restraining order. The district court thoroughly reviewed the evidence upon which the jury could have reasonably based its findings and rejected Smith's claim. We conclude that reasonable jurists could not debate the district court's well-reasoned analysis and conclusion that habeas relief isn't warranted on Claim Seven.

"When reviewing the sufficiency of the evidence on a habeas corpus petition, the relevant question is 'whether, after viewing the evidence in the light most

18

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quoting *Jackson v. Virginia*, 307, 319 (1979)). Because of our respect for "the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial," our review is "sharply limited." *Id.* (quotation marks and alterations omitted). "[A] court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996)).

In his COA petition, Smith fails to show why the evidence mentioned by the district court in its order dismissing his habeas petition was insufficient to support the jury's findings at trial.[6] Smith simply argues that "even when viewed in a light most favorable to the prosecution, the evidence would not allow any rational trier of fact to find, beyond a reasonable doubt that he committed felony murder which was based on the predicate offense of burglary, i.e., that he went into his house without permission because there was a restraining order lodged against him." Appellant's

---

[6] In his petition for a COA, Smith stated that he "attache[d] Appendix A, which is a list of transcripts and/or exhibits which show[] by clear and convincing evidence that he had no knowledge of" the August 14, 2002 restraining order. Appellant's Opening Br. at 3(j). After an exhaustive search of the appellate record and Smith's briefing, we were unable to locate this appendix. While a list highlighting particular evidence would have been helpful, we have thoroughly reviewed the record before us and the existence of any such appendix would have no impact on our disposition of Smith's COA application.

Opening Br. at 3(j). While Smith might be able to point to evidence tending to show that he didn't know about the restraining order, he fails to show why the jury had insufficient evidence to make the contrary finding that he did know about the restraining order.

The district court ultimately rejected Smith's insufficient-evidence claim, finding that "[t]he evidence was sufficient to support a finding that [Smith] was aware of the restraining order and as a result violated the order and committed the burglary and felony murder." R. at 737. Specifically, the district court noted that the jury had before it the following evidence upon which it could have reasonably based its findings:

> (1) Mr. Garcia's testimony, which, contrary to [Smith's] claim, does not include a definitive statement that on August 27, 2002, [Smith] did not know of a pending hearing on August 28, 20002; (2) Mr. Mack's testimony that [Smith] did know on August 27, 2002, he was subject to a restraining order; and (3) Ms. Taken-Alive's testimony that on August 27, 2002, [Smith] told her he had to go to court with the victim at 8:00 a.m. the next morning.

R. at 737. We agree with the federal district court that a rational jury could have found Smith guilty of burglary, felony murder, and violating a restraining order in the face of this evidence as well as other evidence at trial. The district court's thorough review of the evidence at trial and Smith's failure to address or rebut the district court's findings convince us that no reasonable jurist would disagree with the district court's conclusion that this evidence was sufficient to support the jury's ultimate findings. We therefore deny Smith's petition for a COA on this issue.

20

**6.    Claim Nine: Ineffective Assistance of Appellate Counsel[7]**

In Claim Nine, Smith argues that his appellate counsel on direct appeal was ineffective for failing to amend Smith's opening brief to allege a claim under *Crawford v. Washington*, 541 U.S. 36 (2004), which had been decided two months after Smith filed his opening brief and eleven months before the Colorado Court of Appeals ruled on Smith's direct appeal. The district court denied habeas relief on Claim Nine, noting that Smith had "failed to demonstrate a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." R. at 673. We conclude that no reasonable jurist could debate the soundness of the federal district court's decision, and deny a COA for this issue.

In *Crawford*, the Supreme Court held that, "in order for testimonial evidence to be admissible, the Sixth Amendment 'demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *Michigan v. Bryant*, 562 U.S. 344, 354 (2011) (quoting *Crawford*, 541 U.S. at 68). Smith claims that his direct-appeal counsel was ineffective for failing to raise a *Crawford* claim attacking police officers' testimony at trial.[8] Indeed, three different officers testified at trial about statements the deceased victim made to them when they responded to calls

---

[7] On April 4, 2016, Smith submitted supplemental authority related to this claim under Fed. R. App. P 28(j). We have considered the authority cited in Smith's Rule 28(j) letter.

[8] In his traverse in the federal district court, Smith abandoned an argument that his direct-appeal counsel was ineffective for failing to raise a *Crawford* claim attacking statements the deceased victim made to a friend, focusing instead on the police officers' testimony.

21

reporting a verbal altercation and to calls asserting that Smith had violated earlier restraining orders.[9]

The Colorado Court of Appeals' discussion of Smith's ineffective-assistance-of-appellate-counsel claim frames the issue well:

> The postconviction court found that the victim's statements to law enforcement officials were testimonial, and the admission of the testimony denied defendant his due process right to confrontation. However, the postconviction court relied on *Vasquez v. People*, 173 P.3d 1099 (Colo. 2007), to conclude that defendant had forfeited his right to confrontation. *Vasquez* holds that, 'where . . . (1) the witness is unavailable; (2) the defendant was involved in, or responsible for, procuring the unavailability of the witness; and (3) the defendant acted with the intent to deprive the criminal justice system of evidence, the defendant then forfeits his right to [confrontation].' *Id.* at 1104.
>
> A year after *Vasquez* was announced, the United States Supreme Court clarified its position on the forfeiture doctrine, and explained that forfeiture by wrongdoing is an exception to the right to confrontation only where the defendant acted with the intent to prevent the declarant from testifying. [*Giles v. California*, 554 U.S. 353, 361 (2008)]. "[W]here the evidence suggest[s] that the defendant . . . caused a person to be absent, but [did] not [do] so to prevent the person from testifying—as in the typical murder case involving accusatorial statements by the victim—the testimony [i]s excluded unless it was confronted or fell within the dying-declarations exception." *Id.* at 361–62. Statements are admissible under the forfeiture doctrine only where the defendant's "wrong" was designed to prevent a witness from testifying. *Id.* at 365.

---

[9] Specifically, Deputy Aaron Baker testified about a conversation that he had with the victim on August 10, 2002, when he responded to a call about a verbal altercation. As a result of this call, Smith was arrested for domestic violence, harassment, and criminal mischief. Deputy Baker testified that, upon Smith's release the following day, Smith was issued a temporary restraining order. Officer John Surma testified about a conversation that he had with the victim on August 12, 2002, when he responded to a call alleging a violation of a restraining order. Officer Mark Garcia testified about a conversation that he had with the victim on August 14, 2002, when he responded to another call alleging a violation of a restraining order.

22

R. at 368–70 (certain alterations and omissions in original). The Colorado Court of Appeals then concluded that it didn't need to "address whether defendant's actions were sufficient to satisfy the intent requirement of *Giles* because defendant is unable to show that he was prejudiced by appellate counsel's failure to raise the *Crawford* issues on appeal." *Id.* at 371.

Indeed, to establish that counsel was ineffective, Smith must "demonstrate that counsel's performance (1) was unconstitutionally deficient, and (2) resulted in prejudice." *United States v. Watson*, 766 F.3d 1219, 1225 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). And, of course, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see id.* ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). The Colorado Court of Appeals tackled Claim Nine by proceeding directly to the prejudice prong, and the federal district court followed suit. Specifically, the federal district court concluded that Smith had "failed to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." R. at 673. As support for its conclusion, the federal district court noted that "[s]ix individuals were able to identify [Smith] either by seeing or hearing him at the time of the shooting. One of the individuals who saw [Smith] commit the shootings had known him for a number of years, referred to him as uncle, and stated his name in the

23

911 call she made." R. at 673–74. The Colorado Court of Appeals recited even more evidence against Smith and noted that his only "theory of defense at trial was misidentification, and that he was not the shooter." R. at 371–72.

In his COA application, Smith argues that he was prejudiced because the victim's statements to officers went to his "degree of guilt" and that, without the statements, "he could reasonably have been found guilty of second degree murder instead of first." Petitioner's Opening Br. at 3(m). Having reviewed the record and the previous courts' list of the considerable evidence against Smith, this bald assertion on appeal isn't enough to grant a COA on Claim Nine. No reasonable jurist could debate the district court's denial of the ineffective-assistance-of-appellate-counsel claim.

In Claim Nine, Smith also argues that his direct-appeal counsel was ineffective because, had his counsel raised the *Crawford* issue, Smith's case would have become the *Giles* case. In other words, Smith argues that his case was essentially *Giles* before *Giles*, so he was prejudiced because his case could have made it to the Supreme Court before *Giles* did. In Smith's own words, his argument is as follows:

> Taking it step-by-step, had appellate counsel amended and added the *Crawford* claim he *most certainly would have* argued not only that the hearsay was testimonial and that there was no exception to the hearsay doctrine that allowed said. The reviewing court *would have* determined (as it did anyway), that the error was harmless and Mr. Smith forfeited his right by killing the victim. This issue *would have* progressed and Mr. Smith *would have* presented his *Crawford* claim to the U.S. Supreme Court in advance of that presented in *Giles*. Accordingly, there is a reasonable probability that had counsel raised the *Crawford* issue, the outcome of Mr. Smith's appeal *would have* been different and he would have stated a valid claim under *Strickland*.

24

Petitioner's Opening Br. at 3(l) (emphasis added). The federal district court denied this portion of Claim Nine, noting that (1) Smith had first made the argument in his traverse, *Loggins v. Hannigan*, 45 F. App'x 846, 849 (10th Cir. 2002) (unpublished) (refusing to consider petitioner's argument when he first raised the argument in his traverse); (2) the argument was conclusory and insufficient to warrant habeas relief, *see Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001) (noting that conclusory allegations were insufficient to warrant habeas relief); (3) the argument wasn't raised in the opening brief in his state-court postconviction proceedings; and (4) the argument failed on the merits because he failed to assert how he was prejudiced by his direct-appeal counsel's failure to raise the *Crawford* claim. In light of these several deficiencies, we conclude that no reasonable jurist could decide Smith's Claim Nine differently. Thus, we deny Smith's COA request.

### 7.    Claim Eleven: Ineffective Assistance of Trial Counsel

In Claim Eleven, Smith argues that his trial counsel was ineffective for three reasons, which we discuss below. As with Claim Nine, to establish that counsel was ineffective, Smith must "demonstrate that counsel's performance (1) was unconstitutionally deficient, and (2) resulted in prejudice." *Watson*, 766 F.3d at 1225 (citing *Strickland*, 466 U.S. at 687). And, again, a court may proceed directly to the prejudice prong of the *Strickland* analysis. *See Strickland*, 466 U.S. at 697.

## a. Failure to Investigate and Present Evidence

In his first ineffective-assistance claim, Smith argues that his trial counsel was ineffective because she failed to "raise [a] non-motive defense." Petitioner's Opening Br. at 3(n). The federal district court explained Smith's argument as follows:

> In this claim, [Smith] asserts that trial counsel was ineffective for not investigating and presenting evidence that he rescued his wife from a prescription drug overdose prior to the shooting. [Smith] contends that this evidence would have rebutted the prosecution's theory that [Smith] premeditated his wife's murder. [Smith] further contends trial counsel stipulated that this evidence would not be admitted unless [Smith] testified; but the evidence could have been admitted otherwise through the victim's medical records, which were available because the records were disclosed to the district attorney. Finally, [Smith] asserts that another person was present when [Smith] discovered his unconscious wife, but trial counsel elected not to have this person testify.
>
> In the Traverse, [Smith] further asserts that trial counsel should have presented the suicide attempt evidence, along with evidence that the shooting was committed by someone else as a result of a drug debt owed by the victim.

R. at 674 (citations omitted). Again, the federal district court quoted the Colorado Court of Appeals' analysis of this claim at length. We do the same:

> Because of the difficulties inherent in evaluating an attorney's conduct without relying on the distorting effects of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Thus, in any ineffective assistance case, "a particular decision . . . must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.
>
> Mere disagreement as to trial strategy will not support a claim of ineffectiveness. *People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986). The decision to call a particular witness at trial is a tactical decision, and thus, rests within the discretion of trial counsel. [*Davis v. People*,

26

871 P.2d 769, 773 (Colo. 1994)]. Trial counsel's decision not to call certain witnesses is bolstered where such testimony would open the door to presentation of damaging evidence by the prosecution. *Id.*

Here, trial counsel testified at the postconviction hearing that she investigated defendant's claim that he rescued his wife from a drug overdose, but decided not to present such evidence at trial. Trial counsel testified that the length of time between the victim's overdose and the shooting was significant, and thus affected the probative value of the evidence. According to her testimony, trial counsel believed that defendant would likely have to testify to succeed in admitting his state-of-the-mind evidence, but recommended against defendant taking the stand because his testimony would allow the People to introduce other incriminating evidence. Moreover, despite defense counsel's opposition, the trial court granted the People's motion in limine to exclude any evidence that the victim was suicidal because of its minimal probative value.

In light of this evidence, we perceive no error in the postconviction court's finding that trial counsel's decision to advise defendant not to testify was a reasonable strategic decision and did not fall outside the range of reasonable professional assistance. Indeed, after the trial court granted the motion in limine, defense counsel was prohibited from presenting evidence that the victim was suicidal.

R. at 375–77. With this as background, the federal district court denied Smith habeas relief on this portion of his ineffective-assistance claim. We agree with the district court's determination and deny his request for a COA.

In his COA application, Smith argues that the federal district court erred in denying his ineffective-assistance-of-trial-counsel claim for two reasons. First, in arguing that his trial counsel should have introduced evidence tending to show that he had saved his wife's life after she experienced a prescription-drug overdose, Smith notes that his wife's near-death experience occurred much closer in time to his wife's murder than the federal district court or his trial counsel believed: "Counsel said that it was some six months prior to the killing (which the lower court relies on), however

27

this simply isn't true . . . . Mr. Smith cannot prove this without the assistance of counsel and thus asks this Court to remand on this claim . . . ." Petitioner's Opening Br. at 3(o). We understand Smith to argue that, because his wife's overdose (and his life-saving actions) was closer in time to her murder than his trial counsel or the federal district court believed, his trial counsel could have successfully presented this evidence to the jury to show that he didn't want his wife to die. Smith's COA application ignores the federal district court's analysis of this claim:

> The Court has reviewed the state court transcripts for the evidentiary hearing held in his Rule 35(c) postconviction motion proceeding. [Smith]'s claim that trial counsel was ineffective in not thoroughly investigating the law and facts regarding the victim's suicide attempt is not supported by the Rule 35(c) evidentiary hearing record. First, contrary to [Smith's] claim that the victim's suicide attempt was within two weeks of the shooting, [Smith] stated during the Rule 35(c) hearing that "[i]t was close to around somewhere within six months or so, or less."
> Furthermore, during the hearing [Smith] states he told trial counsel that Maurice Cooper, LaShawn Moffitt, and Mitch Lewis were witnesses to the suicide attempt, but counsel did not interview them. Trial counsel testified at the Rule 35(c) hearing that she did interview family members, Maurice Cooper and Mitch Lewis, regarding the suicide attempt and they provided information to counsel relevant to [Smith's] state of mind regarding his wife; but she opted not to introduce the evidence because [Smith] most likely would have had to testify to succeed in introducing the statement-of-mind evidence. The trial court, however, granted a motion in limine for the prosecution that prohibited the introduction of the suicide attempt.

R. at 678. Thus, in Smith's own words, the overdose occurred sometime about six months before his wife's murder. And, regardless of when the overdose happened, the federal district court noted that the state district court granted a motion in limine excluding evidence of the overdose. This being so, we agree with the federal district

28

court's conclusion that Smith has "not demonstrated a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." R. at 680; *see Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Second, Smith argues in his COA application that the federal district court and his trial counsel inappropriately speculated about the consequences of Smith testifying at his own trial. In Smith's own words:

> Defense counsel also stated that the prosecution would have been allowed to introduce other 911 calls concerning previous domestic violence calls by the victim if the evidence of Mr. Smith's saving of the victim's life were to come in. Respectfully this . . . is . . . an assumption that the trial court would have ruled in this fashion. Not once do Respondents or the lower court point to a place in the record where the trial court ruled upon this issue. Frankly speaking because they cannot.

Petitioner's Opening Br. at 3(o). In addressing this argument, it's helpful to once again state Smith's ineffective-assistance claim: Smith asserts that his trial counsel was ineffective because she failed to present evidence that Smith had helped save his wife's life after she experienced a prescription-drug overdose. It appears that, after a thorough investigation, Smith's trial counsel had concerns about the viability of presenting this evidence as a defense. Smith's trial counsel didn't think the evidence could have been introduced without Smith testifying, and Smith's trial counsel had understandable concerns about what evidentiary doors could open if Smith testified. To the extent Smith's argument above attacks the trial counsel's strategy in deciding to omit evidence of the victim's overdose, we note that a counsel's performance isn't

29

deficient as long as it "falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). And, regardless, Smith ignores a fact crucial to the district court's habeas decision: The state district court granted a motion in limine (which Smith's trial counsel opposed) seeking to exclude evidence of the victim's overdose. Smith doesn't explain how his trial counsel's speculation and ultimate strategic decision prejudiced his trial in light of the state district court's order. Thus, we conclude that no reasonable jurist would debate that the district court properly denied his habeas petition because Smith failed to "demonstrate[] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." R. at 680. We deny this portion of his COA application.

### b. Failure to Present Expert Testimony

Smith next argues that his trial counsel was ineffective for failing to offer the testimony of an expert in response to a prosecution witness who testified about "(1) the procedure for obtaining a restraining order in Colorado; (2) how victims sometimes are manipulated by offenders to not follow through with a restraining order; and (3) how victims worry about how the offender will feel when served with the order." R. at 681. Specifically, Smith argues as follows:

> At Mr. Smith's 35(c) hearing, trial counsel testified in pertinent part that she didn't even consider obtaining a rebuttal expert and didn't know of anyone who would testify differently than the state's expert.
> Respectfully, this is a clear case of failure to investigate. While Mr. Smith, due to his incarcerated status cannot immediately point to an

30

expert who would have testified differently, it is well known that jurors accept what experts say (the C.S.I. syndrome), as being indisputable.

\* \* \*

Respectfully, Mr. Smith submits that counsel had an obligation to conduct sufficient investigations to discover and present an expert which would have rebutted the state's expert. As previously noted, counsel concedes she didn't do so and didn't even consider the possibility of obtaining such an expert. . . . Accordingly, Mr. Smith was denied the effective assistance of counsel required by the Sixth Amendment.

Petitioner's Opening Br. at 3(p)–3(q).

We note that this argument is much different than the arguments that appear in Smith's habeas petition. Indeed, the federal district court never addressed this alleged deficiency in Smith's trial counsel's performance because Smith had never claimed that his trial counsel was ineffective for failing to locate an expert witness. Instead, Smith argued in his habeas petition that his trial counsel was ineffective for, among other things, failing to object to the prosecution witness's testimony. Thus, because this issue wasn't presented to the district court, "we adhere to our general rule against considering issues for the first time on appeal." *United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012); *see Patrick v. Patton*, 634 F. App'x 220, 222 n.4 (10th Cir. 2015) (unpublished) (declining to consider issues in a petitioner's COA application that "were not presented in his petition").

c.     **Failure to Recognize Conflict of Interest**

In the third and final portion of his ineffective-assistance-of-trial-counsel claim, Smith argues that his trial counsel was ineffective for failing to recognize a

31

nonwaivable conflict of interest. Specifically, Smith argues in his COA application that his trial counsel "was forced to cross-examine a witness who was represented by an attorney from the same public defender's office as that of Mr. Smith's counsel." Petitioner's Opening Br. at 3(r). This general statement of Smith's argument is consistent with the arguments he raised in his habeas petition and in the state court. Yet the district court denied habeas relief on this claim, again citing the Colorado Court of Appeals' analysis at length. We also quote the Colorado Court of Appeals' analysis:

> Defendant further contends the trial court failed to recognize a nonwaivable conflict. In its order following the postconviction hearing, the court dismissed this claim as "spurious at best since [defendant's] trial counsel recognized that . . . her office could not represent the witness in a criminal matter and immediately withdrew and alternate defense counsel was appointed to represent the witness."
> Trial counsel testified at the postconviction proceeding:

>> Q: Did your office at some point represent Ms. Taken-Alive [one of the prosecution's witnesses] in a felony case here in Colorado Springs?

>> A: Apparently.

>> But once that attorney realized she was a witness in [defendant's] case, our office moved to withdraw and A.D.C. was appointed. I think it was the same day.

>> Q: Did you follow the policy of the Public Defender's office once you found out about the conflict?

>> A: Yes.

>> Q: Do you ever remember notifying [defendant] of this potential conflict?

>> A: I think so.

> The record supports the postconviction court's finding that this claim was "spurious at best." This conduct does not support a claim of ineffectiveness. *See Strickland*, 466 U.S. at 690–91; [*People v. Villarreal*, 231 P.3d 29, 36 (Colo. App. 2009)].

R. at 381–82 (certain alterations in original). The federal district court agreed with the Colorado Court of Appeals' analysis, noting that "[b]ecause [Smith's] claims are conclusory and vague and he does not point to any clear and convincing evidence to the contrary, the Court finds that [Smith] has not demonstrated a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." R. at 687 (citing *Strickland*, 466 U.S. at 694). Again, then, the federal district court denied habeas relief on *Strickland*'s prejudice prong.

But, in his COA application, Smith doesn't seem to contest the district court's analysis of his claim in its broadest sense. Instead, Smith seems to narrow his argument in his COA application, noting that the federal district court and state courts "all indicated that Alternate Defense Counsel, i.e., private counsel not connected to the public defender's office was appointed. Respectfully this isn't the case. While another attorney was appointed to represent the witness when counsel discovered the witness was represented by her, the attorney who was appointed was not private counsel, but instead an attorney from counsel's same office." Petitioner's Opening Br. at 3(r). In other words, Smith is alleging that he was prejudiced because the alternate defense counsel didn't cure any existing conflict of interest. As with Smith's claim that his trial counsel was ineffective for failing to locate an expert, discussed above, we note that this conflict argument is completely different from the

33

arguments that appear in Smith's habeas petition. Thus, because this issue wasn't presented to the district court, "we adhere to our general rule against considering issues for the first time on appeal." *Viera*, 674 F.3d at 1220; *see Patrick*, 634 F. App'x at 222 n.4 (unpublished) (declining to consider issues in a petitioner's COA application that "were not presented in his petition"). We deny Smith's COA application on his ineffective-assistance-of-trial-counsel claim.[10]

### 8. Unexhausted Claims & Claim Eleven

Having addressed all of Smith's habeas claims that the federal district court decided on the merits, we now turn to the claims that the federal district court decided on procedural grounds. Again, as to the claims that the district court denied on procedural grounds, we may issue a COA only if Smith shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (quotation marks omitted).

#### a. Claim Two

In Claim Two, Smith asserts that the state district court violated his right to a fair trial by allowing a "putative expert witness to relate theories in psychology that

---

[10] We further note that, even if we construed Smith's COA application to disagree with the federal district court's ruling that the conflict of interest didn't prejudice Smith's trial, we would agree with the district court's denial of habeas relief. As in the federal district court, Smith's COA application doesn't point to any prejudice he may have suffered as a result of this conflict in light of his trial counsel's curative actions after she recognized that a conflict existed.

are unreliable proof of motive, intent and propensities." R. at 480. The district court concluded that this claim was "procedurally defaulted and therefore barred from federal habeas review" because Smith had failed to present this claim on direct appeal in state court. R. at 487. In his COA application, Smith doesn't argue that he adequately presented this claim on direct appeal in state court.[11] Of course, this isn't necessarily the end of Smith's Claim Two:

> There are two circumstances where a federal court may nevertheless consider claims subject to an anticipatory procedural bar: (1) if the prisoner has alleged sufficient cause for failing to raise the claim and resulting prejudice or (2) if denying review would result in a fundamental miscarriage of justice because the petitioner has made a credible showing of actual innocence.

*Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (quotation marks omitted).

In his COA application, Smith argues that the federal district court erred by concluding that he couldn't show cause for his procedural default.[12] In the federal district court, in his traverse, Smith argued that he had shown cause for failing to raise Claim Two on direct appeal because "the default occurred at a time when he had a constitutional right to assistance of counsel, i.e., on direct appeal." After this assertion, Smith cited *Coleman v. Thompson*, 501 U.S. 722 (1991), and accurately cited that case as saying that "[w]here a petitioner defaults a claim as a result of the

---

[11] Even if he had, we note that the federal district court thoroughly reviewed Smith's state-court briefing, including the portions that Smith said raised the claim, and concluded that "[n]othing . . . indicates that [Smith] presented a federal constitutional claim in state court with respect to Claim Two." R. at 483. We agree with the district court's conclusion.

[12] Smith doesn't argue that denying review would result in a fundamental miscarriage of justice.

denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." *Coleman*, 501 U.S. at 754. Smith further noted that "[p]rejudice will turn on whether [Claim Two] has merit or not." R. at 442. Given the juxtaposition of Smith's assertion and his citation to *Coleman*, the district court interpreted Smith as arguing that his direct-appeal counsel's ineffective assistance caused the procedural default of Claim Two.

The federal district court recognized that "[i]neffective assistance of counsel may establish cause excusing a procedural default." R. at 486 (citing *Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998)). Then the district court said that "[Smith], however, must show [that] 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule' and [Smith must also] have 'presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" R. at 486 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Applying this standard to Smith's case, the district court concluded that Smith's "claim that because he had a constitutional right to assistance of counsel he has shown cause for any procedural default is conclusory and vague." R. at 487. The federal district court then continued: "[Smith] does not demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule and that he has presented this argument to the state courts as an independent claim." *Id.*

We certainly agree with the federal district court's conclusion that Smith's argument—that he has shown cause for Claim Two's procedural default by alleging that he had a constitutional right to assistance of counsel—is conclusory and vague. We agree with the district court's interpretation of Smith's traverse. In other words, we also believe that Smith is arguing that his direct-appeal counsel was ineffective for failing to raise Claim Two. But Smith has never made the necessary arguments under the *Strickland* standard to support this argument. *See Murray*, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, . . . we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). We can't address whether Smith's direct-appeal counsel's ineffectiveness constitutes cause for Smith's procedural default of Claim Two when Smith has failed to argue that his direct-appeal counsel was ineffective for this reason under *Strickland*. As just one example, Smith never attempts to show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Smith doesn't even cite *Strickland* in his discussion of Claim Two's procedural issues. Instead, he makes the bald assertion that he's shown cause simply because he had a constitutional right to counsel on direct appeal. Smith does indeed have a right to effective assistance of counsel on direct appeal. But to show cause for

37

a procedural default, Smith must show that his direct-appeal counsel was *ineffective*.

Without arguments under *Strickland*, Smith's cause argument is woefully inadequate.

Ineffective assistance is but one method of showing cause for a procedural default, though. *See Frye v. Raemisch*, 546 F. App'x 777, 785 (10th Cir. 2013) (unpublished) (noting that "[c]ause may be shown by *either* actual ineffective assistance of counsel *or* some objective factor external to the defense that impeded efforts to comply with state procedures" (emphasis added)). The district court recognized this and concluded that Smith also couldn't show cause via some objective factor external to the defense. We agree with the district court's procedural analysis here[13] because Smith argued that he showed cause only because of his direct-

---

[13] We do have one concern with the district court's analysis, though. In discussing the standard for showing cause, the district court correctly stated that ineffective assistance could establish cause for a procedural default. But, saying "however," the district court said that Smith had to establish some objective factor external to his defense. This could be read as requiring Smith to show *both* ineffective assistance of counsel under the Sixth Amendment *and* some objective factor external to his defense to show cause for a procedural default. But, as the Supreme Court noted in *Murray* and confirmed in *Coleman*, "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the state." *Murray*, 477 U.S. at 488. In other words, constitutional ineffective assistance of counsel is an objective factor external to the defense. *See Coleman*, 501 U.S. at 754–55 (discussing *Murray* in depth and noting that "[a]ttorney error that constitutes ineffective assistance of counsel is cause" for procedural default). It's unclear whether the district court required Smith to show both ineffective assistance and an objective factor external to the defense. If it did so, that requirement was error. But the district court's conclusion that Smith's ineffective-assistance argument was conclusory and vague is sufficient, on its own, to deny relief on Claim Two. If Smith failed to argue how his direct-appeal counsel was ineffective, Smith couldn't have shown cause via that route. *See Frye v. Raemisch*, 546 F. App'x 777, 785 (10th Cir. 2013) (unpublished) (noting that "[c]ause may be shown by *either* actual ineffective assistance of counsel *or* some objective factor external to the defense that impeded efforts to comply with

appeal counsel's ineffectiveness. Having described above why his argument was inadequate, and having no other argument to turn to, it follows that he hasn't shown some other factor external to the defense. *See Murray*, 477 U.S. at 488. Because no reasonable jurist would find it debatable whether the district court was correct in its procedural ruling, we deny his COA application for Claim Two.

Even if Smith had properly argued that his direct-appeal counsel was ineffective for failing to raise Claim Two, we note that he never made this separate claim in his habeas petition. As the Supreme Court has held, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). We addressed above Smith's only claim that his direct-appeal counsel was ineffective, and Smith's claim didn't involve appellate counsel's failure to raise Claim Two. Instead, it raised appellate counsel's failure to amend Smith's opening brief to raise a *Crawford* claim. In his COA application, Smith doesn't address this issue. He never argues that his procedural default of this ineffective-assistance claim should be excused for cause or any other reason. We therefore deny a COA on Claim Two.

### b.    Claim Four

In Claim Four, Smith argues that the state district court violated his right to a fair trial when it admitted into evidence a recording of a witness's 911 call placed

state procedures" (emphasis added)). Therefore, we deny a COA despite any potential error in the district court's analysis.

immediately after the shooting. Specifically, Smith argues that the district court should have excluded the 911 recording under Fed. R. Evid. 403 and the district court also erred in "admitt[ing] the tape without even listening to it." R. at 23. The federal district court dismissed Claim Four as procedurally defaulted. The entirety of Smith's argument in his COA application is as follows:

> Mr. Smith will respectfully rely on the arguments presented above when addressing Claim 2, as again the lower court cites, at least in pertinent part that Mr. Smith has not shown that some objective factor to the defense caused the procedural default, i.e., failure to cite proper federal authority on direct appeal does not allow exhaustion of a claim.

Petitioner's Opening Br. at 3(t). We find it difficult to understand Smith's argument here, but because he cites to his Claim Two argument, we assume that he again argues that he has shown cause to excuse his Claim Four procedural default on grounds that his direct-appeal counsel was ineffective for failing to raise the constitutional 911-recording issue. To better understand Smith's argument on appeal, it also helps to look at the portion of the federal district court's analysis of Claim Four that follows the court's conclusion that Claim Four was unexhausted:

> [Smith's] claim that because he had a constitutional right to assistance of counsel he has shown cause for any procedural default is conclusory and vague. Also, his claim that counsel should have supplemented any pending brief based on *Crawford* and *Davis* may demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, *e.g.* new law, but he has not shown that he has presented this argument regarding Claim Four to the state courts as an independent claim.

R. at 488–89 (citation omitted).

40

Simply put, the district court correctly concluded that Smith had procedurally defaulted his claim that ineffective assistance of his appellate counsel was cause for excusing a procedural default on Claim Four. True, Smith argued that his direct-appeal counsel was ineffective for failing to raise a *Crawford* claim about police officers' testimony about the victim's statements (a claim we reject above). But Smith never argued that his direct-appeal counsel was ineffective for failing to raise a claim that the state district court violated his right to a fair trial when it admitted the 911 recording.[14] We therefore deny a COA on Claim Four, noting that no reasonable jurist would disagree with the federal district court's procedural ruling.

### c. Claim Eleven

In Claim Eleven, Smith argues that his trial counsel was ineffective for several reasons. The federal district court reached the merits on three of these reasons and denied habeas relief. We reviewed those three claims above and denied a COA on each of them. But the federal district court didn't address the merits of Smith's claim that his trial counsel was ineffective for failing "to conduct forensic examinations." R. at 489. Instead, the federal district court reasoned as follows:

---

[14] On direct appeal, Smith's counsel did argue that the district court erroneously admitted the 911 recording under Rule 403. Yet, as the federal district court noted when it concluded that Smith's Claim Four was unexhausted, Smith never tied this issue to "a fair trial violation based on a federal constitutional claim." R. at 488. To the extent Smith's COA application argues that the district court erred in this conclusion, we note that we have thoroughly reviewed Smith's state-court briefs and conclude that no reasonable jurist would question the district court's determination that Smith procedurally defaulted Claim Four by failing to bring before the state courts a federal constitutional claim.

41

> In his Reply, [Smith] asserts that his ineffective assistance of trial counsel claim regarding the failure to conduct forensic examinations was fully and fairly presented to the state courts. [Smith] contends that the district court failed to address the forensics claim, which the court has a duty to address all claim claims in a Rule 35(c) motion, and on direct appeal he requested the [Colorado Court of Appeals] to remand this claim back to district court for a ruling so that claim could be addressed on appeal, but the [Colorado Court of Appeals] elected not to do so.
>
> The [Colorado Court of Appeals] acknowledged [Smith's] failure to address [this] claim when it affirmed the denial of the Rule 35(c) postconviction motion. The [Colorado Court of Appeals] found no reversible error in the district court's denial of [Smith's] motion based on incompleteness. [Smith] does not specifically address the forensic claim in the opening brief. Furthermore, [Smith's] claim that the district court failed to follow state procedure in a Rule 35(c) motion is not a federal constitutional claim. A challenge to the state postconviction proceedings does not present a cognizable federal issue. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (a claim that focuses on postconviction remedy and not a judgment for basis of incarceration is not a cognizable federal constitutional claim in a federal habeas action); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993); *see also Del Rantz v. Hartley*, 577 F. App'x 805, 807 (10th Cir. 2014).
>
> Nonetheless, Claims Eleven(i), (ii), and (iii) were presented and addressed by the [Colorado Court of Appeals]. The Court will dismiss only the forensic claim in Claim Eleven.

R. at 489–90 (record citations omitted). In addressing this procedural ruling in his COA application, Smith says only the following: "The lower court did not address the fact that Mr. Smith submitted that this claim was fully and fairly exhausted. If this isn't sufficient, Mr. Smith will rely on the same factors he did on Claims 2 and 4 *supra* as listed immediately above." Petitioner's Opening Br. at 3(u) (record citations omitted). As the above-quoted portion of the federal district court's analysis of Claim Eleven shows, the federal district court *did address* Smith's argument that this portion of Claim Eleven was fully and fairly exhausted. The district court thoroughly

reviewed the state courts' analysis of this claim before denying relief. We conclude that reasonable jurists couldn't disagree with the federal district court's procedural ruling and deny COA on Claim Eleven.

As to Smith's one-sentence argument referring us to his arguments under Claim Two and Claim Four, we note that we won't craft a party's arguments for him, even if he proceeds pro se. *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999). Because this argument isn't sufficiently developed to allow for meaningful appellate review, we deny COA on the forensic-investigation portion of Claim Eleven. *McCain v. McCollum*, 606 F. App'x 425, 430 n.2 (10th Cir. 2015) (unpublished).

## B.    Motion to Proceed *In Forma Pauperis*

Under 28 U.S.C. § 1915(a)(3), the district court certified that this appeal would not be taken in good faith. Nonetheless, we may consider Smith's IFP motion under Fed. R. App. P. 24(a)(5). *See Rolland v. Primesource Staffing, LLC*, 497 F.3d 1077, 1078–79 (10th Cir. 2007). Having reviewed Smith's IFP motion on appeal, we conclude that Smith has not demonstrated the existence of "a financial inability to pay the required fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812–13 (10th Cir. 1997) (quotation marks omitted). Thus, we deny his IFP motion.

## CONCLUSION

For the foregoing reasons, we deny Smith's IFP motion and deny Smith's application for a COA on all of his habeas claims.

Entered for the Court

Gregory A. Phillips
Circuit Judge